KENNETH W. GUENTHER AND MARVA GUENTHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guenther v. Commissioner
Docket No. 967-84.
United States Tax Court
T.C. Memo 1987-440; 1987 Tax Ct. Memo LEXIS 437; 54 T.C.M. (CCH) 382; T.C.M. (RIA) 87440; August 31, 1987. *437 K and M were married and filed joint Federal income tax returns for the years in issue. To substantiate deductions claimed for business, investment, travel and entertainment expenses, for charitable contributions, for rental expenses, for interest payments and for miscellaneous expenses, K and M provided their accountant with a mass of documents, most of which lacked annotations indicating the purpose for which the documented expense was incurred. Among the documents were checks and receipts representing expenses attributable to a different taxpayer, business expenses that had been reimbursed by K's employer, personal expenses and expenses that did not exist. Some of the checks provided in support of deductions for interest payments were stamped by a bank symbol indicating that they had been cashed. The same documents were provided to R in support of the deductions K and M claimed on their joint income tax returns. K was the sole shareholder of T Company. K and T Company each had accounts with the same stock brokerage company. K sold 1,900 shares of stock from his personal account. K and M did not report as income the amount realized from the sale of the 1,900 shares of *438 stock. Indeed, the amount realized was reported on the corporate income tax return of T Company. Held, Ps are not entitled to deductions for business, investment, travel and entertainment expenses, for charitable contributions or for rental expenses in excess of the amounts allowed by R. Held further, the amount of gain realized from the sale of the 1,900 shares of stock is taxable income to Ps. Held further, K is liable for additions to tax for fraud under section 6653(b). Held further, no statute of limitations bars the assessment of collection of tax in this case. Gary R. DeFrang, for the petitioners. Gerald W. Douglas, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined *440 deficiencies in petitioners' income tax and additions to tax in the following amounts for the following taxable years: Addition to Tax
Taxable Year
Deficiency
Section 6653(b)[1]
1978
$ 14,603
$ 7,301
1979
41,479
20,740
After concessions, the issues for decision are: (1) Whether petitioners are entitled to deductions for business, investment, travel and entertainment expenses in excess of the amounts allowed by respondent for the taxable years 1978 and 1979; (2) Whether petitioners are entitled to deductions for charitable contributions in excess of the amounts allowed by respondent for the taxable years 1978 and 1979; (3) Whether petitioners are entitled to deductions for rental expenses in excess of the amounts allowed by respondent for the taxable years 1978 and 1979; (4) Whether the amount realized from the sale of 1,900 shares of Grief Brothers stock was taxable income to petitioners or to a closely held corporation; *441 (5) Whether petitioner Kenneth Guenther is liable for additions to tax under section 6653(b) for the taxable years 1978 and 1979; and (6) Whether respondent is barred by the statute of limitations from assessing and collecting petitioners' tax liability for the taxable year 1978. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and exhibits attached thereto are incorporated herein by this reference. Petitioners Kenneth and Marva Guenther resided in Portland, Oregon, at the time the petition in this case was filed. Kenneth and Marva Guenther are currently legally divorced. Petitioners currently reside in Portland, Oregon. Hereinafter, petitioners will be referred to individually as Kenneth and Marva and jointly as petitioners. Petitioners have one child, Lisa Guenther, born in 1959. Kenneth has a daughter, Victoria Hudson, from a previous marriage. During the taxable years 1978 and 1979, Marva was not employed. Lisa Guenther was a full-time college student during the 1978 and 1979 tax years. During the years in issue, Kenneth was employed as a marketing executive by the Georgia Pacific Corporation in Portland, *442 Oregon (hereinafter referred to as Georgia Pacific). Kenneth's responsibilities as a marketing executive for Georgia Pacific included helping to find, develop and market company products. In his capacity as a marketing executive, Kenneth supervised a staff of junior executive employees whose travel expense reports he reviewed and signed. Since September, 1980, Kenneth has been employed as a vice president of R. B. Pamplin Corporation in Portland, Oregon. As a vice president for R. B. Pamplin Corporation, Kenneth holds a management position that involves marketing building materials, creating new markets, creating new products, and creating new sales outlets and distribution for building materials. Kenneth has a Bachelor of Science degree in forestry and a Master of Science degree in forest products from Michigan State College. To educate himself and to improve his knowledge about tax laws, Kenneth read The Wall Street Journal, Barons, Forbes, Fortune and other publications. During the taxable year 1978, Kenneth subscribed to a publication entitled Tax Angles and deducted the cost of the publication on his Federal income tax return. In addition to his activities on behalf *443 of Georgia Pacific during the years in issue, Kenneth was a 50 percent general partner and active participant in Northwest Frontier Co., owned and managed rental properties, was engaged in product development activities and invested in stocks and bonds and other financial instruments. Northwest Frontier Co. was a partnership formed in 1964. Its primary business activity was investment in real estate. The partnership also invested in stocks. John Slothower was the other 50 percent partner of Northwest Frontier Co. Kenneth bought and sold real estate on behalf of the Northwest Frontier Co.
During the years in issue, Kenneth was also the sole shareholder of Tangent Development Corporation. Tangent Development Corporation owns an apartment complex and invests in stocks. Petitioners employed an accountant, Elmer Liebert, to prepare their 1978 and 1979 Federal income tax returns. Liebert had prepared Kenneth's returns since 1958. Liebert had the authority to and did represent petitioners during an audit by the Internal Revenue Service of their tax returns for the 1978 and 1979 taxable years. Liebert interviewed Kenneth and obtained information from him that was used in preparing *444 petitioners' 1978 and 1979 Federal income tax returns. Kenneth submitted to Liebert all his records of business and investment activities and expenses in the form of workpapers, summary sheets, cancelled checks, receipts and bills for the purpose of preparing petitioners' tax returns. Before preparing the tax returns, Liebert discussed with Kenneth items that would be entered on them. Petitioners' 1978 and 1979 tax returns were prepared by Elmer Liebert and his son Richard Liebert, who also was a certified public accountant, strictly from information provided by Kenneth. During the taxable years 1978 and 1979, petitioners made the following interest payments: 1978
1979
B. Franklin
$ 280   Home Mortgage
$ 212
First National
466   IRS
49
Dean Witter
6,246   Holland Assoc.
710
Source Securities
1,483   First National
1,657
Wed Bush
3,718   Wed Bush
1,517
Holland Assoc.
215   Somer Grove
1,527
Dean Witter
857
TOTAL
$ 12,408   TOTAL
$ 6,529
During the years in issue, petitioners did not make any interest payments to the Tangent Development Corporation or to any of its officers, *445 shareholders or directors; to N. W. Frontier Co. or John Slothower; to Victoria Hudson; or to Lisa Guenther. Kenneth had two loans at the First National Bank of Oregon for the purchase of stock in a Georgia Pacific stock purchase plan. On their 1978 and 1979 income tax returns, petitioners took deductions for interest paid, including interest paid to the First National Bank. Kenneth submitted to his accountant for use in preparing petitioners' 1978 tax return a document entitled "Interest Paid" on which he included notations concerning payments to First National Bank. Many of the checks on which Kenneth relied in making the "Interest Paid" document were each in the amount of $ 100, payable to the order of First National Bank and marked by the bank symbol "1." This symbol indicates that the checks had been cashed. The checks written to First National Bank marked by the bank symbol "1" and signed by Kenneth in 1979 totaled $ 5,070. There are no notes, agreements or contracts in existence that establish that the $ 100 checks by Kenneth in 1978 and 1979 to the First National Bank marked by the bank symbol "1" relate to any loan. During the years in issue, petitioners, in their *446 individual capacities, owned as rental property four duplexes located at 3639 to 3653 S.W. 52nd Place, Portland, Oregon. Petitioners have been the only owners of the four duplexes since they were built in 1969. Petitioners took trips to Hawaii in 1978 and 1979 and were accompanied by their daughter Lisa Guenther. On their trip to Hawaii in 1978, petitioners were also accompanied by their friends Paul and Maxine Roscoe. Petitioners saw the Roscoes every day and ate dinner with them. Petitioners and the Roscoes did not discuss business during the meals they shared. The Roscoes went to Hawaii for a vacation and not for any business purpose. In Hawaii, petitioners engaged in many recreational activities. Kenneth went sightseeing, sat on the beach and played tennis with his friend Paul Roscoe. Marva did not go to Hawaii for any business purpose. Petitioners do not have any records and did not keep contemporaneous records of any alleged business dealings while in Hawaii in 1978 and 1979. Petitioners did not have any investments in their individual capacities in Hawaii. During the taxable years 1978 and 1979, petitioners took trips to a ski resort at Sun Valley, *447 Idaho. Kenneth spent time skiing on those trips. Petitioners never provided any records or documents evidencing any business dealings while in Sun Valley. Petitioners did not have any investments in Sun Valley in their individual capacity. During the taxable year 1978, petitioners went to Europe. While in Europe, petitioners engaged in sightseeing activities. Petitioners kept no records or logbook evidencing any business purpose for the trip. Petitioners made no investments in Europe in their individual capacities. Kenneth traveled extensively for Georgia Pacific and was reimbursed for some of his travel expenses. Kenneth submitted records and documents pertaining to his travel and entertainment expenses to his accountant Elmer Liebert to be used in preparing petitioners' 1978 and 1979 Federal income tax returns. Some of the same receipts Kenneth submitted to Georgia Pacific for which Kenneth was reimbursed were also submitted by Kenneth to Liebert to be used in preparing petitioners' returns. Kenneth was a member of Central Lutheran Church during the years in issue. During 1978 and 1979, petitioners' daughter Lisa attended Pacific Lutheran University. Petitioners deducted *448 as charitable contributions the tuition payments made to Pacific Lutheran University for Lisa's education. In 1979, Kenneth maintained a stock account in his individual name with the brokerage firm Black and Company, Inc. In the same year, Kenneth's wholly-owned corporation, the Tangent Development Corporation, maintained a stock account in the corporation's name with the brokerage firm Black and Company, Inc. In 1979, Kenneth maintained a stock account with the brokerage firm Somers, Grove, and Company. In 1979, Kenneth bought 1,500 shares of Grief Brothers stock through his individual stock account at Black and Company, Inc., and 400 shares of Grief Brothers stock through his individual stock account at Somers, Grove, and Company. Kenneth transferred the 400 shares of Grief Brothers stock bought through his account at Somers, Grove, and Company to his individual stock account maintained at Black and Company, Inc. One thousand nine hundred shares of Grief Brothers stock were sold in 1979 through the stock account in Kenneth's name at Black and Company, Inc. A gain of $ 17,830 was realized from this sale. On their 1979 income tax return, petitioners reported a gain of $ *449 2,524 for the sale of 250 shares of Grief Brothers stock. The 250 shares of stock reported on petitioners' 1979 income tax return were a group or block of stock separate from the 1,900 shares of Grief Brothers stock for which a gain of $ 17,830 was realized. The $ 17,830 gain realized from the sale of Grief Brothers stock was not reported on petitioners' 1979 Federal income tax return, but was reported on the Tangent Development Corporation's corporate tax return for 1979. During the years in issue, Kenneth engaged in his individual capacity in other stock transactions that were reported on his income tax returns rather than on Tangent Development Corporation's corporate income tax returns. in August, 1980, Revenue Agent David Hummel of the Internal Revenue Service informed Kenneth that he would be examing petitioners' 1978 tax return. During the initial interview Hummel and Kenneth discusses the preparation of petitioners' 1978 tax return. Kenneth told Hummel that he put the basic numbers and information together and then gave them to his accountant Elmer Liebert. Hummel began his audit examination by asking Kenneth to substantiate the $ 49,000 of travel and entertainment expenses *450 claimed on petitioners' 1978 tax return. In response to Hummel's request, Kenneth handed documents to Hummel one at a time rather than allowing him to sit down and go through the records all together. The documents handed to Hummel were chits and receipts, none of which contained annotations indicating the business purpose of the expenditure. When Hummel asked Kenneth for a record book of his travel expenses setting forth the purpose of his trips and the time that the costs were incurred, Kenneth stated that he did not keep a record or a log of such items, but instead kept all the information in his head. Kenneth told Hummel that the primary purpose of his travel and entertainment expenses in 1978 concerned investment properties that he either owned or was interested in acquiring. On several occasions Hummel asked Kenneth to identify specific investments, but Kenneth never did. Included in the documentation submitted to substantiate petitioners' travel and entertainment expenses were records of expenses incurred by Kenneth, Marva and their daughter Lisa on petitioners' trips to Hawaii, Sun Valley and Europe. Hummel asked Kenneth to identify the specific business purpose of *451 his 1978 trips to Hawaii, Sun Valley and Europe. In response to this request, Kenneth annotated the records and documents he had provided to his return preparer, Elmer Liebert. These annotations were not on the records and documents when Liebert received them. Most of the annotations indicate that the expenses were incurred in connection with real estate investments. However, none of the annotations identify the specific property involved, the person or persons present at various discussions or any specific matter discussed concerning potential investments. Kenneth told Hummel that all his travel expenses that had been reimbursed by Georgia Pacific were accounted for separately and that none of these expenses were included in the deduction claimed for travel expenses on petitioners' 1978 tax return. Nevertheless, the documents petitioners submitted in connection with their travel and entertainment expense deduction included records documenting travel expenses that had been reimbursed by Georgia Pacific. During the course of his examination, Hummel made several written requests to Kenneth and his accountant Elmer Liebert for documents and information regarding the issues under *452 examination. Because Hummel had not been provided an opportunity to examine the documents in detail, he asked Kenneth to send the information to Elmer Liebert so that he could look at the requested materials in Liebert's office. Hummel's request was granted, and in early 1981, Hummel moved his examination from Kenneth's office to Liebert's office. At Liebert's office, Hummel was provided a bundle of records in support of petitioners' 1978 travel and entertainment expenses. Although petitioners deducted $ 49,000 as travel and entertainment expenses, the records provided to Hummel documented only a total of approximately $ 15,000 in expenses. Because Kenneth did not provide sufficient documentation to support the deduction claimed for travel and entertainment expenses on petitioners' 1978 return, Hummel expanded the scope of his examination to include the 1979 taxable year. Hummel repeated his analyis of petitioners' travel and entertainment and business expenses for 1979. When Hummel informed Kenneth that a review of petitioners' travel and entertainment records for 1978 and 1979 indicated that the documentation did not support the amounts claimed on petitioners' tax returns *453 for these years, Kenneth stated that there were no more records. Hummel's examination included a review of the deductions for charitable contributions claimed on petitioners' income tax returns for 1978 and 1979. Hummel asked Kenneth about the amounts deducted as a charitable contribution that were incurred for the education of Lisa Guenther at Pacific Lutheran University. Kenneth admitted to Hummel that the expenses were for his daughter's education, but he explained that he believed that the excess amount of these expenses over the amount that his daughter would have paid to go to school in Portland were charitable in nature and therefore deductible. Hummel also conducted an examination of the amounts petitioners deducted on their 1978 tax return for rental expenses. Petitioners' records provided in support of their claimed 1978 rental expenses included documentation of insurance expenses attributable to a different taxpayer, expenses from prior years, accounting expenses related to the preparation of petitioners' daughter's tax return for an earlier year, duplication of legal and accounting expenses and an amount for a reserve for taxes that that was never paid. Hummel also *454 reviewed petitioners' records for interest expenses deducted in 1978. When Hummel asked Kenneth about a series of checks marked by the bank symbol "1" indicating that they had been cashed, Kenneth stated that the checks represented a loan and that the loan purpose associated with these checks would be established by the loan documentation. However, Kenneth never provided proof that a loan existed for which the checks marked by the bank symbol "1" represented interest payments, nor did he provide an explanation to establish that these checks qualified as an interest deduction. When Hummel informed Kenneth that the checks in question had been cashed, Kenneth denied receiving cash for these checks. Then Hummel suggested that he go to the bank to verify the meaning of the symbol "1" on the checks. In response, Kenneth became angry and told Hummel that he did not want him anywhere near the bank where the checks had been cashed. In response to respondent's discovery requests, petitioners provided documents and records concerning miscellaneous itemized deductions taken in 1978 and 1979. The total amount of all the documented miscellaneous expenses for 1978 is substantially less than *455 the amount reported by petitioners on their 1978 tax return. Many of the documents submitted by petitioners concerning their miscellaneous itemized deductions in 1979 do not indicate a purpose for which the deductions should be allowed. Some of the documents submitted to substantiate petitioners' miscellaneous itemized deductions for 1978 and 1979 are duplicates, such as a check and an invoice in the same amount and for the same item. In response to respondent's discovery requests, petitioners provided documents and records concerning their rental expense deduction for the taxable years 1978 and 1979. [2] Most of the documents submitted by petitioners concerning their rental expenses contain no identification to show that they relate to petitioners' rental property, and many do not indicate the item for which the expense was incurred. Many checks allegedly in payment for labor were written to the order of Kenneth's daughters Lisa Guenther and Victoria Hudson. On one of the checks written to Lisa appears the annotation for "exp. and books." *456 OPINION Many issues in this case have been settled by the parties. Of the remaining issues, respondent has allowed several deductions that reduce, but do not eliminate, the tax deficiencies in dispute. Although the concessions reduce the deficiencies claimed by respondent, petitioners still bear the burden of proving that they are entitled to the deductions they have claimed. Rule 142(a); Silverman v. Commissioner,538 F.2d 927 (2d Cir. 1976), affg. T.C. Memo. 1974-285, cert. denied 431 U.S. 938 (1977); Gobins v. Commissioner,18 T.C. 1159, 1168-1169 (1952), affd. 217 F.2d 952 (9th Cir. 1954); Standard Paving Co. v. Commissioner,13 T.C. 425 (1949), affd. on other grounds 190 F.2d 330 (10th Cir. 1951), cert. denied 342 U.S. 860 (1951). Business, Investment, Travel and Entertainment Expenses
Rsepondent disallowed most of the deductions taken on petitioners' 1978 and 1979 income tax returns for business and investment travel and entertainment expenses. Petitioners *457 concede the disallowance of all the deductions for business travel claimed on the returns for the years in issue except for the expenses deducted for Kenneth's trips to Hawaii in 1978 and 1979 and for his trip to Europe in 1978. Respondent takes the position that these deductions are not allowable because petitioners have failed to satisfy the substantiation requirements of section 274. Section 162 allows a deduction for all the ordinary and necessary expenses incurred during the taxable year in carrying on any trade or business, including traveling expenses while away from home in pursuit of a business. Section 212 allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the production of income. Petitioners argue that Kenneth went to Hawaii in 1978 and 1979 to investigate investment properties and to Europe to obtain foreign financing for the partnership Northwest Frontier Co., and, therefore, his expenses for the trips are business expenses *458 deductible under section 162 or investment expenses deductible under section 212. Even if Kenneth's travel expenses are deductible under sections 162 and 212, the requirements of section 274(d) must be met before the deductions can be allowed. Section 274(d), as in effect during the years in issue, provided in pertinent part: (d) SUBSTANTIATION REQUIRED. -- No deduction shall be allowed -- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement, (A) the amount of such expense * * *, (B) the time and place of the travel * * *, and (C) the business purpose of the expense * * *, and (D) the business relationship to the taxpayer of persons entertained * * *. [3]
Section 1.274-5(b) )2), Income Tax Regs., provides: (2) Travel. The elements to be proved with respect to an *459 expenditure for travel are -- (i) Amount. Amount of each separate expenditure for traveling away from home, such as cost of transportation or lodging, except that the daily cost of the traveler's own breakfast, lunch, and dinner and of expenditures incidental to such travel may be aggregated, if set forth in reasonable categories, such as for meals, for gasoline and oil, and for taxi fares; (ii) Time. Dates of departure and return for each trip away from home, and number of days away from home spent on business; (iii) Place. Destinations or locality of travel, described by name of city or town or other similar designation; and (iv) Business purpose. Business reason for travel or nature of the business benefit derived or expected to be derived as a result of travel. The rules for substantiation are set forth in section 1.274-5(c), Income Tax Regs.[4]Section 1.274-5 (c)(2), Income Tax Regs., requires that to meet the "adequate records" requirements of section 274 (d), a taxpayer must maintain an account book, diary, statement of expense or similar record and documentary evidence which, in combination, are sufficient *460 to establish each element of an expenditure specified in section 1.274-5(b), Income Tax Regs. Each recording in the account book, diary, statement of expense or similar record must be made at or near the time of the expenditure. Section 1.274-5(c)(2)(ii), Income Tax Regs.
*461 Petitioners have presented documentary evidence, but have failed to offer into evidence any account book, diary, statement of expense or similar record to substantiate any business purpose for Kenneth's travel expenses. Kenneth admitted to Internal Revenue Agent Hummel that he never kept a record book or a log. The only information provided by petitioners to substantiate the business purpose of Kenneth's travel expenses were annotations accompanying the documents. The annotations were not on the records Kenneth provided to his accountant Elmer Liebert in connection with preparing petitioners' 1978 and 1979 tax returns, but were provided to Revenue Agent Hummel in 1981 during his audit of petitioners' travel and entertainment expenses for 1978 and 1979. The annotations were not made "at or near the time" the expenditures were incurred. Because they neglected to keep an account book, diary, statement of expense or similar record made at or near the time Kenneth's travel expenditures were incurred, petitioners have failed to meet the requirements for substantiation set forth in section 1.274-5(c), Income Tax Regs. Petitioners' records are so inadequate *462 that they have also failed to meet the "substantial compliance" standard of section 1.274-5(c)(2)(v), Income Tax Regs.
If a taxpayer fails to establish that he has substantially complied with the "adequate records" requirements with respect to an element of an expenditure, he may establish the element by his own statement containing specific information in detail as to such element and by other corroborative evidence sufficient to establish the element. Section 1.274-5(c)(3), Income Tax Regs.
Petitioners submitted annotations to the documents to Internal Revenue Agent Hummel in an attempt to establish a business purpose for Kenneth's trips to Hawaii and Europe in 1978 and 1979. Kenneth also testified that in Hawaii he looked at properties, made an offer to buy some condominiums and contacted a financial institution, and that he went to Europe to obtain financing for the partnership Northwest Frontier Co., in which he had a 50 percent interest. We find that these statements, made long after the expenditures in question were incurred, *463 are self-serving and are insufficient to satisfy the substantiation requirements of section 274. Petitioners have presented no evidence, either by testimony or documentation, of any specific piece of property that Kenneth investigated or of any specific persons with whom he discussed investment possibilities. Nor did petitioners invest in any property in their individual capacities in Hawaii or Europe during the years in issue. Moreover, the weight of the evidence indicates that Kenneth engaged in sightseeing activities during his trips to Hawaii and in Europe in 1978 and 1979. Accordingly, petitioners have failed to establish the business purpose of Kenneth's trips to Hawaii and Europe under section 1.274-5(c)(3), Income Tax Regs. Nor are the petitioners able to rely on sections 1.274-5(c)(4) or 1.274-5(c)(5), Income Tax Regs., which provide for substantiation in exceptional circumstances and substantiation when the loss of records is due to circumstances beyond the control of the taxpayer. Because petitioners have failed to substantiate the business purpose of Kenneth's trips to Hawaii and Europe in 1978 and 1979, the deductions are disallowed. *464 Charitable Contributions
Respondent disallowed deductions claimed as charitable contributions on petitioners' 1978 and 1979 tax returns for payments made for their daughter's education at Pacific Lutheran University. Petitioners concede that these deductions are not allowable but maintain that the deductions in question had no tax significance for 1978 because of the percentage limitation for charitable contributions. Although the deductions may have had no tax significance for 1978, this Court cannot overlook the tax consequences resulting from petitioners' attempt to carry over to their 1979 tax return excess charitable contributions from 1978. Petitioners also argue that they are entitled to certain deductions for charitable contributions in excess of the amounts allowed by respondent in 1978 and 1979. Petitioners have not produced any documentation to substantiate these expenditures. Accordingly, petitioners have failed to meet their burden of proving that respondent's determinations were incorrect, and the deductions are disallowed. Rental Expenses
On their 1978 and 1979 income tax returns, petitioners claimed deductions for the expenses of four duplex rental *465 properties. Of the $ 55,361 claimed as rental expense on petitioners' 1978 tax return, respondent has allowed $ 21,259. The amount of $ 34,102 remains in dispute in this case. Of the $ 62,437 claimed as rental expenses on petitioners' 1979 tax return, respondent has allowed $ 21,563. The amount of $ 40,874 remains in dispute. Petitioners maintain that the additional amounts are deductible under sections 162 and 212. We find that the amounts petitioners deducted for rental expenses in 1978 and 1979 were excessive. In 1978, petitioners claimed $ 55,361 in deductions for property from which they reported only $ 28,775 in rental income. On their 1979 tax return, petitioners deducted $ 62,437 of alleged expenses for property from which they reported only $ 30,575 in rental income. Petitioners offered no remotely convincing evidence to support any expense deductions in excess of those previously allowed by respondent. Petitioners deducted $ 180 per year for Kenneth's automobile expenses for travel in connection with the rental property. In support of this deduction, petitioners request that we apply the rule established in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), *466 under which this Court may approximate the amount incurred for local transportation if it is convinced an amount was actually spent. The only evidence offered by petitioners to support their claim for automobile expenses was Kenneth's testimony that he and Marva used a car to travel from their home to the rental property and to pick up supplies and that the rental property was located approximately five miles from their home. There is no documentary evidence in the record regarding the automobile expense and there is no evidence in the record from which we can determine how often petitioners traveled to the property. Although the Cohan rule may be applied to local business transportation expenses, petitioners introduced no evidence from which we can reasonably estimate the amount of miles driven in their automobile for local business purposes. The deduction is disallowed. See Miller v. Commissioner,, T.C. Memo. 1982-491; Paolini v. Commissioner,T.C. Memo 1982-69, affd. without published opinion 707 F.2d 1394 (3d Cir. 1983). The documents which petitioners presented to respondent through discovery concerning other claimed *467 rental expenses for their 1978 and 1979 tax returns comprise an incomprehensible mass of checks, receipts and other documents which contain no reference to any identifiable business purpose. Kenneth's testimony in support of petitioners' claim for additional rental expense deductions was self-serving and lacked credibility. Of the documents offered by petitioners to substantiate rental expenses for the 1978 taxable year in excess of the expenses allowed by respondent, only one was annotated. The annotated document is a check dated August 30, 1978, payable to petitioners' daughter Lisa Guenther, allegedly for services she performed in connection with the rental property, on which appears an annotation indicating that the check was written for "exp. and books." In 1978, Lisa Guenther was a college student. We can only conclude that the check was written not as payment for her services, but to pay for her college expenses and books. Kenneth's testimony in support of the rental deductions was based on an eight-year-old recollection and was vague. Kenneth could not identify the specific items for which many of the documented expenses were incurred. Petitioners also offered the *468 testimony of their daughter Lisa Guenther to support some of the rental expenses they claimed on their 1978 and 1979 tax returns. Lisa had a difficult time remembering specific facts, and her testimony was even more vague than Kenneth's. Petitioners have failed their burden of proving that they are entitled to deductions for rental expenses in 1978 and 1979 in excess of the amounts allowed by respondent. Petitioners argue that rental income for 1978 was overstated and should now be reduced. The only evidence petitioners produced to support this claim was an entry on the working papers generated by respondent's agent during the audit of petitioners' 1978 income tax return. The working papers are administrative documents relating to the audit of petitioners' income tax returns. As we stated in Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327-328 (1974): As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his *469 determinations. * * * The underlying rationale for the foregoing is the fact that a trial before the Tax Court is a proceding de novo; our determination as to petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level. [Citation omitted.] The revenue agent's working papers, even though they for the basis of respondent's notice of deficiency, are not competent evidence to prove the truth of the facts contained therein in the absence of a specific agreement to that effect. Blanco v. Commissioner,56 T.C. 512, 515 (1971). Accordingly, petitioners have failed to prove that respondent's determination of the deficiency in tax resulting from rental deductions was incorrect. Grief Brothers Stock
During the taxable year 1979, Kenneth maintained stock accounts in his individual name with the stock brokerage firms of Black and Company, Inc., and Somers, Grove, and Company. During 1979, the Tangent Development Corporation, Kenneth's wholly-owned corporation, maintained a stock account in the corporation's name with the stock brokerage firm of Black and Company, Inc. In 1979, Kenneth bought *470 1,500 shares of Grief Brothers stock through his individual account at Black and Company, Inc., and 400 shares of Grief Brothers stock through his individual account at Somers, Grove, and Company. Kenneth transferred the 400 shares of Grief Brothers stock bought through his account at Somers, Grove, and Company to his individual account at Black and Company, Inc. During the taxable year 1979, Kenneth sold the 1,900 shares of Grief Brothers stock from his individual account at Black and Company, Inc. This sale gave rise to a realizable gain of $ 17,830. The realizable gain from the sale of the 1,900 shares of Grief Brothers stock from Kenneth's individual account at Black and Company, Inc., was not reported on petitioners' individual Federal income tax return, but was reported on the Tangent Development Corporation's corporate Federal income tax return for 1979. During 1979, Kenneth engaged in other stock transactions in his individual capacity that were reported on his individual tax return, and not on Tangent Development Corporations' tax return. Respondent takes the position that the gain realized from the sale of the 1,900 shares of Grief Brothers stock from Kenneth's individual *471 account is attributable to Kenneth and not to another taxpayer, the Tangent Development Corporation. It is well established that income is taxable to the person who earns it, and the corresponding incidents of taxation cannot be shifted or transferred to another person. Lucas v. Earl,281 U.S. 111 (1930). Petitioners maintain that the 1,900 shares of Grief Brothers stock actually were owned by the Tangent Development Corporation and not by Kenneth. The only evidence offered by petitioners to support their position is a journal entry made by petitioners' accountant stating that the 1,900 shares of Grief Brothers stock had been sold on behalf of the corporation. We find that the 1,900 shares of Grief Brothers stock at issue in this case were purchased and sold by Kenneth and not by the Tangent Development Corporation. Although the corporate records indicate a sale of the stock by the corporation, it is well settled that where book entries are found to be at a variance with the *472 facts, the decision must rest on the facts. Lanteen Medical Laboratories, Inc. v. Commissioner,10 T.C. 279, 288 (1948). In this case the entry indicating the sale of stock by the corporation was not made until after the close of the 1979 tax year when it was apparent whether it would be more advantageous to attribute the gain realized from the sale to the corporation or to petitioners. As the sole shareholder of the Tangent Development Corporation, Kenneth was in a position to manipulate the books of the corporation as he pleased. Had Kenneth intended the stock to be sold by the corporation, he would have bought and sold the stock through the corporation's account at Black and Company rather than through his individual account at the same brokerage firm. Having failed to prove the sale of the stock was a corporate transaction, petitioners must include the gross income the gain realized from the sale of the 1,900 shares of Grief Brothers stock in 1979. Petitioners' reliance on Bessemer Inv. Co. v. Commissioner,31 F.2d 248 (2d Cir. 1929), is misplaced. In Bessemer, the court held that the taxpayer corporation did not realize taxable profit *473 from the sale of certain shares of stock even though book entries reflected gain from the transfer of the stock because the stock was originally purchased on behalf of the transferees and was therefore taxable to the transferees. Two years before the journal entries in Bessemer were made, the taxpayer had agreed to purchase and carry the stock on behalf of the transferees. There was also testimony in Bessemer that it was the practice of the taxpayer to purchase and carry stock and other securities for the accounts of persons associated with it. In this case there is no evidence that Kenneth ever held stock in his name on behalf of the Tangent Development Corporation. Nor is there any evidence of a preexisting agreement that Kenneth should hold the stock for the corporation. In fact, the only documentary evidence in this case indicating that the gain from the sale of the Grief Brothers stock belonged to the Tangent Development Corporation is a record created after the transaction occurred. Petitioners also rely on Lanteen Medical Laboratories, Inc. v. Commissioner, supra, in which this Court held that the entire loss from the sale of securities purchased *474 in the name of the parent company was attributable to the taxpayer corporation. In Lanteen, it was established that there existed a substantial indebtedness from the parent company to the taxpayer, its subsidiary. The principal shareholder and president of the parent company had on file with brokers the authority to purchase securities in the name of that company but not in the name of the taxpayer. The principal shareholder of the parent company testified that he had intended to purchase the securities for the taxpayer using funds which the parent company owed the taxpayer. This Court found that the purchase of the securities had been entered erroneously on the books of the parent company. The principal shareholder in Lanteen was the dominant and controlling personality in the affairs of both the parent company and the taxpayer. He had been out of town when the securities were delivered and had left no instructions to anyone concerning the recording of the securities on the books of either company. The books of the taxpayer and those of the parent company were kept in the same office by the same persons. Later, when the principal shareholder discovered the mistake, *475 the securities were transferred from the parent company to the taxpayer at the original cost. In Lanteen, this Court found it noteworthy that there was nothing in the record to suggest any purpose to shift the deductions from one corporation to another closely related corporation to gain a tax advantage. In fact, it was established that the parent company had sufficient income to cover the entire loss on the securities. in this case the evidence is insufficient to establish Kenneth's intent to purchase the stock on behalf of the corporation. Unlike Lanteen, there is nothing in the record in this case from which we can determine the source of the funds used to purchase the stock. In Lanteen, the principal shareholder was forced to buy the securities in the name of the parent company because he did not have authority to purchase securities in the name of the taxpayer. In this case Kenneth had authority to purchase and sell the stock through the Tangent Development Company's account. His choice to purchase and sell the stock through his own personal account indicates that he intended that the stock belong to him. In Lanteen, the corporate records reflecting ownership *476 of the stock by the taxpayer were made shortly after the mistake had been discovered and before the end of the taxable year. In this case the entries indicating ownership by the corporation were made after the close of the taxable year. The record in this case suggests that the petitioners have sought to gain a tax advantage by shifting income from the sale of the Grief Brothers stock from themselves to the corporation. The shifting of income from one taxpayer to another is impermissible. Lucas v. Earl, supra.
The section 6653(b) Addition to Tax
Respondent takes the position that the payments of petitioners' income tax for the years in issue are due to fraud and that a 50 percent addition to tax should be imposed against Kenneth, but not Marva, for each of those years. Section 6653(b)[5] provides that a taxpayer must pay an addition to tax if any part of any underpayment of tax required to be shown on a return is due to fraud. Respondent has the burden of proving, by *477 clear and convincing evidence, that some part of the underpayment for each year in issue was due to fraud. Section 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). *478 The existence of fraud is a question of fact to be resolved from consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is not to be presumed. Drieborg v. Commissioner,225 F.2d 216, 218 (6th Cir. 1955); Beaver v. Commissioner,55 T.C. 85, 92 (1970). Because fraud can rarely be established by direct proof of the taxpayer's intention, fraud may be proven by circumstantial evidence. Rowlee v. Commissioner, supra at 1123. The taxpayer's entire course of conduct can be indicative of fraud. Stone v. Commissioner,56 T.C. 213, 224 (1971). Upon consideration of the entire record, we conclude that respondent has sustained his burden of proving fraud by clear and convincing evidence for each of the years in issue. The evidence in this case establishes Kenneth's general fraudulent scheme of underpaying taxes by taking deductions in excess of substantiating documents or proof, deducting expenses and deducting large amounts of personal expenditures. The large amounts of deductions taken *479 tend to nullify any thought of honest error. Neaderland v. Commissioner,52 T.C. 532 (1969), affd. 424 F.2d 639 (2d Cir. 1970), cert. denied 400 U.S. 827 (1970). In other words, Kenneth understated petitioners' taxable income by deliberately and grossly overstating their deductions. It is well established that for the purpose of fraud an understatement of taxes can be accomplished by an overstatement of deductions as well as by an omission of income. Estate of Temple v. Commissioner67 T.C. 143, 161 (1976). Kenneth's conduct throughout the investigation of his returns and during discovery in preparation of this case further evidences his fraudulent intent. On both occasions Kenneth attempted to mislead respondent by providing a mass of documentation that did not in fact support the deductions claimed. Included among these deductions were checks and receipts for expenditures incurred on personal vacations, for expenses that had been reimbursed by Kenneth's employer, for expenses that had been paid by another taxpayer, *480 for expenses incurred in earlier years and checks for alleged interest payments that had in fact been cashed. Kenneth's submission of false documentation to respondent and respondent's agent is indicative of fraud. See Robinson v. Commissioner,T.C. Memo. 1984-188. During the initial audit of returns, Kenneth refused to give respondent's agent the set of documents as a whole, but instead made it difficult by forcing the agent to view each document, one at a time, while Kenneth held onto it. A failure to fully cooperate with respondent's agent, as here, is also indicative of fraud. Neaderland v. Commissioner, supra.
Kenneth also attempted to mislead respondent's agent by telling him that he had not deducted any of the travel expenses for which he had been reimbursed and that any of the checks to First National Bank and stamped by the bank symbol "1" represented interest payments. Kenneth's false and misleading statements to respondent's agent are indicia of fraud. Grosshandler v. Commissioner,75 T.C. 1 (1980). Petitioners argue that the underpayments of tax for the years at issue in this case were due to mistakes *481 on the part of petitioners and their accountant rather than fraud. First, petitioners maintain that the amount of the underpayment that respondent has attributed to fraud is small in comparison with the total tax deficiency. Section (6653(b) does not include a balancing test whereby one large nonfraudulent deduction outweighs other fraudulent deductions. The only requirement under section 6653 (b) is a showing that part of the underpayment of tax is due to fraud. Plunkett V. Commissioner,
Petitioners attempt to excuse Kenneth's errors by characterizing him as a person who did not understand the significance of records or recordkeeping or entries on a tax return. To the contrary, Kenneth was an important management executive for a major corporation, a well-educated individual with an advanced degree, and a successful businessman and investor in real estate and the stock market. Kenneth also read several publications to improve his knowledge about tax laws. The evidence does not support a finding that Kenneth lacked the knowledge and acumen to realize the significance of proper *482 recordkeeping. Petitioners also attempt to attribute the errors on their tax returns. Liebert prepared the returns however, from information provided by Kenneth. Petitioners maintain that Liebert was confused as to which expenses were allowable as deductions because petitioners simply provided him with documentation of all the expenses they had incurred during each taxable year. The evidence does not support this argument. Kenneth and Liebert discussed the items on the tax returns before they were prepared and thereby eliminated any possibility of confusion. Petitioners contend that Kenneth's submission of all his records to Liebert precludes a finding that the errors on the tax returns are attributable to fraud on Kenneth's part. We disagree. The evidence shows that Kenneth provided misleading information to Liebert for the purpose of preparing the tax returns. Finally, petitioners argue that respondent's conclusion that Liebert did not exercise due diligence in preparing their tax returns negates the possibility of fraud on their part. petitioners are mistaken. Liebert's conduct is not at issue in this case. Kenneth provided the information to Liebert from which the *483 returns were prepared. Before the returns were prepared, he discussed with Liebert the items that would appear on them. Kenneth also signed the returns. Kenneth cannot now abdicate responsibility for his actions on the basis of any alleged lack of diligence on the part of his accountant. The Statute of Limitations
Petitioners have raised a statute of limitations defense. Because we have found that Kenneth filed the original income tax returns fraudulently with intent to evade tax, no statute of limitations applies in this case. Section 6501(c); Estate of Temple v. Commissioner,67 T.C. 143 (1976); Otsuki v. Commissioner,53 T.C. 96 (1969). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The parties have stipulated that exhibit 13-M contains true and correct copies of Kenneth's books, records and other documents provided to respondent through formal discovery concerning the rental expense deduction for the taxable year 1978. Exhibit 13-M contains many documents dated in 1978 and many documents dated in 1979. Accordingly, we conclude that the documents submitted in exhibit 13-M pertain to both the 1978 and 1979 taxable years. ↩
3. The language quoted above has not been altered substantially by any subsequent amendments with regard to the deductions taken in this case. ↩
4. Section 179(b) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 718, amended the substantiation requirements of section 274(d). The 1984 amendments do not apply in this case because they apply to taxable years beginning after 1984. The Temporary Regulations issued in connection with these amendments apply to taxable years beginning on or after January 1, 1986, and therefore do not apply in this case. Section 1.274-5T(a), Temp. Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In 1985, Congress repealed the 1984 amendments and the Treasury Regulations issued to carry out the 1984 amendments to section 274(d) and reinstated the pre-1984 substantiation rules for 1985 with respect to away-from-home traveling expenses, expenditures with respect to entertainment, amusement or recreational activities and facilities and gifts. Pub. L. 99-44, 99 Stat. 77. The committee Reports on the 1985 Act note that the long standing Treasury regulation on recordkeeping, section 1.274-5, accurately reflects congressional intent as to the documentation that taxpayers are required to maintain. H. Rept. 99-67 (Conf.) (1985), 1985-2 C.B. 359↩, 360 n.2.
5. Section 6653(b) as in effect during the years in issue provided as follows: (b) FRAUD. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. ↩