Seymour **SILVERMAN** et al.,
Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 509, Docket 75–4162.

United States Court of Appeals,
Second Circuit.

Argued Feb. 2, 1976.

Decided June 21, 1976.

Wallace Musoff, New York City (Wagman, Cannon & Musoff, P. C., New York City, on the briefs), for petitioners-appellants.

Gilbert E. Andrews, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Elmer J. Kelsey, Francis J. Gould, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before HAYS, MULLIGAN and GURFEIN, Circuit Judges.

HAYS, Circuit Judge:

Taxpayers Seymour and Helen Silverman and Jack and Frances Silverman appeal from decisions of the United States Tax Court entered May 20, 1975, pursuant to a Memorandum Opinion and Findings of Fact by Judge William H. Quealy[1] filed November 6, 1974, which determined that Seymour and Helen Silverman each owed a deficiency of $43,890 in gift taxes for the year 1968 and that Jack and Frances Silverman each owed a deficiency of $94,395 in gift taxes for the same year.[2] The gifts for which the deficiencies were assessed consisted of shares of class B common stock of Modern Maid Food Products, Inc. ("Modern Maid") transferred to certain trusts organized by the taxpayers. We affirm.

1. Reported at T.C. Memo 1974–285.

2. Seymour Silverman and Helen Silverman are husband and wife, as are Jack Silverman and Frances Silverman. Each wife consented to have the gifts made during the calendar year 1968 considered as having been made one-half by her and the other half by her spouse.

I

Modern Maid, a New York corporation, is engaged in the business of manufacturing and selling breading and batter mixes for use by processors of shrimp, fish, and poultry, and the manufacturing and selling of prepared flour mixes to wholesale grocers. Modern Maid is the corporate successor to a partnership formed in 1933. Prior to August 12, 1968, the capitalization of Modern Maid and its equity holders' respective stock interests were as follows:

| | Common Stock $100 Par Value | Preferred Stock $100 Par Value |
|---|---|---|
| Jack Silverman | 1,284 | 265 |
| Seymour Silverman | 645 | 430 |
| Harold Oppenheim | 225 | 150 |
| Stanley Silverman | 3 | 10 |
| Joel Silverman | 3 | 10 |
| Jack Silverman Foundation | 0 | 575 |
| Total | 2,160 | 1,440 |

On July 13, 1968, Modern Maid's stockholders voted to adopt a proposed plan of reorganization, effective August 12, 1968. Under the proposed reorganization Modern Maid increased its authorized preferred stock $100 par value from 1,500 to 30,000 shares and created two new classes of stock: (a) 24,000 shares of voting class A common stock par value $10 per share and (b) 96,000 shares of nonvoting class B common stock par value $10 per share. Each share of original common stock was exchanged for 10 shares new class A common par value $10 per share, 40 shares new class B common par value $10 per share, and 11 shares preferred par value $100 per share. As a result of this reorganization, the outstanding capital stock of Modern Maid was held as follows:

| | Class A Common $10 Par Value | Class B Common $10 Par Value | 5% Preferred Stock $100 Par Value |
|---|---|---|---|
| Jack Silverman | 12,840 | 51,360 | 14,389 |
| Seymour Silverman | 6,450 | 25,800 | 7,525 |
| Harold Oppenheim | 2,250 | 9,000 | 2,625 |
| Stanley Silverman | 30 | 120 | 43 |
| Joel Silverman | 30 | 120 | 43 |
| Jack Silverman Foundation | 0 | 0 | 575 |
| Total | 21,600 | 86,400 | 25,200 |

On August 12, 1968, Modern Maid entered into an agreement for the sale of unissued class B common stock to selected employees and legal counsel. Pursuant to this agreement Modern Maid sold 4,790 shares of its class B common stock at $10 per share in September, 1968.[3]

On August 21, 1968, Jack Silverman made gifts totalling 51,360 shares of class B common stock to two trusts for the benefit of his children, Joel and Stanley Silverman. On September 24, 1968, Seymour Silverman made gifts totalling 25,800 shares of class B common stock to three trusts for the benefit of three daughters. The proper valuation of these gifts was the subject of the Tax Court's decision and the correctness of the Court's determination in this matter is the sole issue on this appeal.

In March 1969 negotiations were initiated between Modern Maid and investment bankers Ladenburg, Thalmann & Co. concerning a public offering of Modern Maid stock. To implement this plan a Special Meeting of Stockholders of Modern Maid was held on June 16, 1969, at which an amendment to the certificate of incorporation was adopted authorizing a capitalization of 2 million shares of voting common stock of $1 par value and 100,000 shares of convertible preferred stock. Under the new reorganization each share of previously

3. This agreement provided for employee purchases for investment purposes only and prohibited the subscribing stockholders from disposing of or encumbering their stock without the corporation's consent. In the absence of consent or upon the death or retirement of the employee, the agreement provided:

"The party [subscribing stockholder or his estate] . . shall give to the Corporation written notice . . . and such notice shall contain an offer to sell all his stock . . . within thirty (30) days after the date of such notice . . . and the Corporation shall purchase all of such stockholder's stock."

The purchase price was to be based on the value shown on the last Federal income tax return or on the annual financial statement. The parties could also set another value by agreement.

issued and outstanding preferred stock was exchanged for 8.75 shares of the new common stock; each share of previously issued and outstanding class A voting common stock was exchanged for 7 shares of the new common stock; and each share of previously issued and outstanding class B nonvoting stock was exchanged for 6.5 shares of the new common stock. Pursuant to their own plan of reorganization, Modern Maid's stockholders valued the class B common stock at 65/70ths the value of the class A common stock. On October 28, 1969, Ladenburg, Thalmann & Co. issued its prospectus whereby it made a firm commitment to underwrite and publicly sell 350,000 shares of the new common stock of Modern Maid at $12 per share.

The taxpayers filed United States Gift Tax returns for the calendar year 1968 with the district director of Internal Revenue, Brooklyn, New York, reporting a valuation of $10 per share for the gifted class B common stock. In his statutory Notice of Deficiency, the Commissioner of Internal Revenue determined that the stock had a value of $48 per share. At trial the Commissioner reduced his valuation to $25 per share. At the same time, petitioners argued that their original valuation was too high and contended for a $5 per share figure. The Tax Court sustained the Commissioner's valuation by finding that the fair market value of the stock was $37 per share at the times of the gifts and therefore "not less than" the Commissioner's lower valuation of $25 per share. From this determination petitioners appeal.[4]

II

■ We begin with the well established principle that a deficiency determined by the Commissioner is presumptively correct and the taxpayer bears the burden of disproving it. *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Kraut*

*v. CIR,* 527 F.2d 1014, 1018 (2d Cir. 1975); *Rockwell v. CIR,* 512 F.2d 882, 885 (9th Cir.), *cert. denied* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975); *Arc Realty Co. v. CIR,* 295 F.2d 98, 101 (8th Cir. 1961). Taxpayers assert that since the Commissioner changed the amount of the claimed deficiency at the beginning of trial after issuing the statutory notice to taxpayers the presumption of correctness must fall and the burden of proof to establish the value of the gifted stock shift to the Commissioner. This argument is inapplicable where, as here, the Commissioner's change of position operates in favor of the taxpayer. *McMurtry v. CIR,* 203 F.2d 659, 665–66 (1st Cir. 1953). *Cf. Marx v. CIR,* 179 F.2d 938, 941–42 (1st Cir.), *cert. denied,* 339 U.S. 964, 70 S.Ct. 999, 94 L.Ed. 1373 (1950). Moreover, had the Tax Court intended the burden of proof to shift to the Commissioner in the event *any* changes, including reductions, were made in the claimed deficiency before trial, it would not have adopted Rule 142(a) of the Rules of Practice and Procedure of the United States Tax Court (1975)[5] which provides in part:

"The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, *increases* in deficiency, and affirmative defenses, pleaded in his answer, it shall be upon the respondent." (emphasis supplied)

The cases relied on by petitioners are inapposite to the situation presented by the instant appeal because all involve instances where the taxpayer affirmatively proved at trial that the asserted deficiency was erroneous. *Helvering v. Taylor,* 293 U.S. 507, 511, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Kaufman v. CIR,* 372 F.2d 789, 793 (4th Cir. 1966); *A. & A. Tool & Supply Co. v. CIR,* 182 F.2d 300, 303–04 (10th Cir. 1950); *Federal National Bank of Shawnee, Oklahoma v. CIR,* 180 F.2d 494, 497 (10th Cir. 1950). Naturally, if the taxpayer overcomes the

---

4. Jurisdiction in this court is based upon Section 7482 of the Internal Revenue Code of 1954, 26 U.S.C. § 7482.

5. Promulgated by the Tax Court pursuant to 26 U.S.C. § 7453 (1969).

presumption by presenting evidence sufficient to establish that the Commissioner's determination was erroneous it disappears from the case and the burden of proving the correct amount of tax liability shifts to the Commissioner. *Helvering v. Taylor, supra,* 293 U.S. at 514–15, 55 S.Ct. 287; *Cohen v. CIR,* 266 F.2d 5, 11 (9th Cir. 1959) ("When the Commissioner's determination has been shown to be invalid, the Tax Court must redetermine the deficiency. The presumption as to the correctness of the Commissioner's determination is then out of the case. . . . The Commissioner and not the taxpayer then has the burden of proving whether any deficiency exists and if so the amount." (footnote omitted)). The taxpayer does not carry his burden of showing the determination invalid simply by pointing to the fact that the Commissioner has reduced his original deficiency claim prior to trial. *McMurtry v. CIR, supra.* The presumption of correctness of the Commissioner's $25 per share deficiency determination therefore remained to be overcome by petitioners in this case.

### III

The Tax Court upheld the Commissioner's deficiency determination against petitioners by holding that Modern Maid class B common stock had a fair market value of $37 per share at the dates of transfer to the trust funds.[6] The Tax Court's valuation is a factual finding conclusive upon review if not clearly erroneous. *CIR v. Duberstein,* 363 U.S. 278, 290–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *Kraut v. CIR, supra* at 1020, n. 8; *Seas Shipping Co. v. CIR,* 371 F.2d 528, 532 (2d Cir.), *cert. denied,* 387 U.S. 943, 87 S.Ct. 2076, 18 L.Ed.2d 1330 (1967); *Elverson Corp. v. Helvering,* 122 F.2d 295, 298 (2d Cir. 1941). "[O]ur powers of review are very straitly limited upon all issues of fact . . . and that limitation is particularly narrow when the issue is one of value." *Sisto Financial Corp. v. CIR,* 149 F.2d 268, 269 (2d Cir. 1945). *See, Estate of Brown v. CIR,* 425 F.2d 1406 (5th Cir. 1970) (*per curiam*). To support his deficiency claim at trial the Commissioner presented testimony and an appraisal report by his expert witness, Hugh A. MacMullen III. MacMullen's evidence consisted of an analysis and opinion based upon comparisons between Modern Maid and five other companies claimed to be comparable to Modern Maid. MacMullen's appraisal employed three specific methods utilizing the earnings, net worth, operations, and market price of the comparison companies and relating that data to the financial position of Modern Maid to arrive at a valuation which was then discounted to reflect, *inter alia,* the lack of corporate control in the gifted shares arising from the absence of voting rights in the class B common stock. It was MacMullen's opinion that the fair market value of the class B common stock was $25 per share at the times the gifts were made.[7] His conclusion

---

6. Section 2512(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 2512(a) provides:

    "(a) If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift."

7. Fair market value as defined in the Treasury Regulations on Gift Tax § 25.2512–1, 26 C.F.R. § 25.2512–1 means:

    ". . . the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts. The value of a particular item of property is not the price that a forced sale of the property would produce."

    Arm's length sales of the stock to be valued are, of course, the best evidence of value. *Elmhurst Cemetery Co. v. CIR,* 300 U.S. 37, 39, 57

S.Ct. 324, 81 L.Ed. 491 (1937); *Rubber Research, Inc. v. CIR,* 422 F.2d 1402, 1406 (8th Cir. 1970). *See* Treasury Regulations on Gift Tax § 25.2512–2, 26 C.F.R. § 25.2512–2. In the instant case, however, there was no public market in Modern Maid securities at the time of the gifts. Furthermore the Tax Court correctly held that the sales of class B common stock to selected employees and counsel of Modern Maid during September, 1968 lacked the elements of arm's length transactions and therefore did not rely on these sales in reaching its determination of value. *See, Righter v. United States,* 439 F.2d 1204, 194 Ct.Cl. 400 (1971); *Fitts' Estate v. CIR,* 237 F.2d 729 (8th Cir. 1956); 10 Mertens, Law of Federal Income Taxation § 59.18 at 58 (1970) ("Sales to employees, either with or without an agreement to repurchase at the vendees' option, are of no great weight." (footnotes omitted)). *See also,*

was in conflict with the taxpayers' three expert witnesses who opined that the gifted stock had a per share value at the relevant times of $5 or $6 (Harold Wit) and $12 (Gordon V. Smith) and $2 to $5 (Herbert S. Cannon). The Tax Court rejected petitioners' expert testimony and appraisals for the reason that their opinions represented only the viewpoint of a potential buyer and thus failed to give sufficient weight to the position in which a self-interested seller of such substantial blocks of stock would be.[8] It stated that:

> "The expert testimony presented by petitioners with respect to the value of the class B common stock failed to take into account the fact that if petitioners intended to sell a substantial interest in Modern Maid—and the class B common stock represented approximately two-thirds of the equity after the preferred stock—they would have adopted a different course of action or there never would be a sale."

Rather than rely entirely upon the government witness' methodology in arriving at a valuation for the shares, the Tax Court utilized the exchange ratio which taxpayers had adopted in the final reorganization of Modern Maid on June 16, 1969, several months after the gifts in issue were made.[9] Pursuant to the taxpayers' own plan, each share of class A common stock was exchanged for 7 shares of the new common stock while each class B share received 6.5 shares of new common. The taxpayers therefore attributed a value to the class B common stock of $65/70$ths the value of the class A common stock. Applying this ratio as the "yardstick" with which to measure the value of the class B shares at the relevant times, the Court arrived at the figure of $37 per share which is $65/70$ths of $40, the value which the Court found for the class A voting common at the time of gifts. Valuation of the class A shares was obtained through application of a price to average earnings multiple of 10 which had been suggested by petitioners' own expert witnesses.

■ Appellants argue that the Tax Court erred in rejecting the opinions of its expert witnesses and, instead, making reference to the final reorganization and public offering in arriving at a valuation for the class B shares. We disagree. The Tax Court employed the exchange ratio of the subsequent reorganization only to determine the *relative value* of the class B common stock to the class A common stock. Although the actual fair market value of the two classes of stock might have depreciated by the subsequent date, the taxpayers fail to show why their relative value to each other would have varied. While it is perhaps true as argued by appellants that a discount accorded for absence of voting rights in a class of stock in a private corporation would be greater than a similar discount in a

---

Treasury Regulations on Gift Tax § 25.2512–2(f), 26 C.F.R. § 25.2512–2(f) (where selling prices or bid prices and asked prices are unavailable).

8. See, *Williams v. CIR*, 256 F.2d 217, 218–19 (9th Cir. 1958); 10 Mertens, Law of Federal Income Taxation § 59.03 at 11 (1970):
> "To be acceptable, testimony must be the result of careful consideration and more than a casual expression of opinion. The opinion must represent not only the seller's viewpoint, but also the buyer's, since value in the market place reflects both influences."

9. Contrary to appellants' contention, the Tax Court did not completely reject the testimony of the Commissioner's witness. This is revealed by the Court's opinion:
> "An expert witness for respondent testified that the stock [class B common], giving consideration to its restricted character, had a

fair market value as of the date of the gifts of $25 per share. His opinion is supported by a valuation for the common stock, as a whole, discounted for the lack of voting power and control. However, rather than look to opinion evidence with respect to the value of the class B common stock from an outsider, the Court would be inclined to give *greater weight* to the relative value of the class B common stock which the petitioners, who still had control of the corporation, attributed to that stock in the ensuing transaction whereby both classes of stock were exchanged for a single class of voting common stock." (emphasis supplied)

Nowhere does the Court state, as it did with respect to the taxpayers' witnesses, that the data or methodology of the Commissioner's expert was invalid.

public company where shares were widely held, this point is irrelevant here because only one class of common stock was issued by Modern Maid at the time it made its public offering. This being the case, the discount given by taxpayers to the class B shares represented by the $^{65}/_{70}$ths exchange ratio could only reflect the lack of voting rights in the class B stock of Modern Maid as a private company. Taxpayers provided no other explanation for this discount and, of course, the burden was on them to do so.[10]

 Appellants assert that the Tax Court's use of a method of valuation different from that proposed by either their own or Commissioner's experts deprived them of due process of law. This argument is without merit. The Tax Court is not bound by the formulas or opinions proffered by expert witnesses. It may reach a determination of value based upon its own analysis of all the evidence in the record. *Helvering v. National Grocery Co.*, 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346 (1938); *Palmer v. CIR*, 523 F.2d 1308 (8th Cir. 1975); *Fitts' Estate v. CIR*, 237 F.2d 729, 732–33 (8th Cir. 1956); *Penn v. CIR*, 219 F.2d 18, 21 (9th Cir. 1955). "Such a [factual] determination is one that is entitled to be made on all the elements of the particular case." *Heil Beauty Supplies, Inc. v. CIR*, 199 F.2d 193, 195 (8th Cir. 1952). "Valuation is . . . necessarily an approximation. . . . It is not necessary that the value arrived at by the trial court be a figure as to which there is specific testimony, if it is within the range of figures that may properly be deduced from the evidence." *Anderson v. CIR*, 250 F.2d 242, 249 (5th Cir. 1957), *cert. denied*, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844 (1958). Here the Tax Court's finding is supported by substantial evidence in the record including the exchange formula supplied by the petitioners. *See Palmer v. CIR, supra; Hamm v. CIR*, 325 F.2d 934 (8th Cir. 1963), *cert. denied*, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964). *Cf.,*

*Estate of Snyder v. United States*, 285 F.2d 857 (4th Cir. 1961); *Cullers v. CIR*, 237 F.2d 611 (8th Cir. 1956).

We have carefully considered the other points raised by appellants and find them to be without merit. The decision of the Tax Court is affirmed.

---

**10.** The Tax Court noted that the petitioners failed to call as a witness Landenburg, Thalmann & Co., the underwriters of Modern Maid's public offering and probably the best qualified expert to express an opinion with respect to value of the gifted shares.