DANA MARJORIE ALPERN TRUST, FRED SCHWARTZSTEIN, SUCCESSOR TRUSTEE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Alpern Trust v. Commissioner
Docket Nos. 15191-87; 15628-87; 15239-87; 15629-87.
United States Tax Court
T.C. Memo 1988-200; 1988 Tax Ct. Memo LEXIS 229; 55 T.C.M. (CCH) 793; T.C.M. (RIA) 88200; May 5, 1988. Richard A. Shapiro, for the petitioners. Albert Kobylarz, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioners' *230 Federal income tax liabilities and additions to tax as follows: Petitioner Dana Marjorie Alpern Trust, Fred Schwartzstein,
Successor Trustee (docket No. 15191-87)
Addition to Tax
Year
Deficiency
Sec. 6659 [2]
1983
$ 1,673
$   502
1984
3,461
1,038
Petitioners Alvin and Selma Silverman (docket No. 15239-87)
Addition to Tax
Year
Deficiency
Sec. 6659
1982
$ 135,865
$ 34,839
1983
55,801
8,933
Petitioner Susan Alpern Trust, Fred Schwartzstein,
Successor Trustee (docket No. 15628-87)
Addition to Tax
Year
Deficiency
Sec. 6659
1983
$ 1,836
$ 551
1984
3,263
979
Petitioners Jerome and Enid L. Alpern (docket No. 15629-87)
Addition to Taxes
Year
Deficiency
Sec. 6659
1982
$ 37,381
$ 11,214
1983
39,789
11,937
1984
9,959
2,988
Respondent also determined that all or a portion of each of the above underpayments constitute substantial underpayments attributable to tax motivated *231 transactions under section 6621(c), and therefore that an increased interest rate applies to the tax deficiencies. The issues remaining in these consolidated cases pertain to the valuation of a 4.9-acre parcel of land in Suffolk County, Long Island, New York and the applicability of the section 6659 addition to tax and the increase rate of interest under section 6621(c). FINDINGS OF FACT On January 29, 1981, Alson Land Associates, a real estate investment partnership formed by the related petitioners herein, purchased a 9.919-acre parcel of land in Suffolk County, Long Island, New York. The land was on the south fork of eastern Long Island, outside the township of Southhampton. The purchase price for the parcel was $ 540,000. The 9.919-acre parcel was located on the ocean, in an area of Long Island experiencing significant pressure for development. The parcel was zoned R-60 for residential development. In September of 1981, Alson Land Associated subdivided the 9.919-acre parcel into three separate parcels. Two of the new parcels, consisting of approximately 2.5 acres each, were on the oceanfront. The third new parcel, consisting of 4.9 acres, was not on the oceanfront. *232 The parties' expert witnesses described this parcel as having a limited ocean view. The view from this parcel to the north, east, and west was of undeveloped farmland; to the south, across the oceanfront lots, the view was of sand dunes on the beach. Only at an elevation of approximately 25 feet did one have a view of the ocean from this parcel. Even then, the view of the ocean from this parcel could be obstructed by buildings that in future years might be constructed on the adjacent oceanfront lots. It is the balue of this third 4.9-acre parcel that is in dispute in this litigation. On June 9, 1982, Alson Land Associates donated this parcel to South Fork Foundation, Inc., a qualifying section 501(c)(3) tax-exempt charitable organization. Petitioners herein, either direct partners in Also Land Associates or indirect partners therein through another partnership, claimed charitable contribution deductions on their Federal income tax returns with respect to this donation based upon a value for the parcel, as of June 9, 1982, of approximately $ 750,000. Respondent determined that the value of the 4.9-acre parcel was $ 215,000 and reduced the claimed charitable contribution deductions *233 accordingly. Respondent also determined that the section 6659 valuation overstatement addition to tax and additional interest under section 6621(c) were applicable. OPINION
Valuation
Generally, when a taxpayer makes a donation of property other than money to a qualified charitable organization, a deduction is allowed in the amount of the fair market value of the property on the date of the contribution. Sec. 1.170A-1(c)(1), Income Tax Regs. Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs.; United States v. Cartwright,411 U.S. 546, 551 (1973). The fair market value of property raises a question of fact that must be resolved on the basis of all of the relevant evidence. Estate of Andrews v. Commissioner,79 T.C. 938, 940 (1982). As we recently stated, the process of determining fair market value in the context of litigation is particularly unsatisfying. Typically, each party offers expert witness testimony which *234 purports to ascertain the precise valuation formula that should be used in a particular case, and each expert testifies with confidence as to exactly what is wrong with the other expert's approach. Winokur v. Commissioner, 90 T.C. (April 21, 1988) (slip op. at 13). Further, we have stated that -- [t]oo often in valuation disputes the parties have convinced themselves of the unalterable correctness of their positions and have consequently failed successfully to conclude settlement negotiations -- a disposition of disputes such as this. The result is an overzealous effort, during the course of the ensuing litigation, to infuse a talismanic precision into an issue which should frankly be recognized as inherently imprecise and capable of resolution only by a Solomon-like pronouncement. * * * [Messing v. Commissioner,48 T.C. 502, 512 (1967).] The opinions of the expert witnesses in this case have been helpful. Those opinions have been given appropriate weight in light of all of the evidence and in light of the manner in which their reports were prepared. Silverman v. Commissioner,538 F.2d 927, 33 (2d Cir. 1976), affg. a Memorandum *235 Opinion of this Court. Petitioners' expert witness has a long familiarity with property located on eastern Long Island. He lives and works in Southampton. His real estate work, which includes sales and appraisals over the past 15 years, has dealt with property located exclusively on eastern Long Island. He does not, however, have and MAI certificate. He also is not affiliated with any professional appraisal organizations, nor has he received any formal education or training in real estate appraisal techniques. He apparently does not participate in continuing education to enhance his appraisal skills. He has been affiliated with efforts of the township of Southampton to encourage donations of land to preserve open space on eastern Long Island. His lack of formal training in appraisal techniques and his affiliation with local efforts to encourage donations of property cause us to be cautious of his opinion in this case. Respondent's expert is and MAI real estate appraiser whose extensive professional qualifications include the presidency of the Long Island Chapter of the Society of Real Estate appraisers. He has lectured and written on real estate appraisal techniques. He, *236 however, has less experience than does petitioners' expert with property located on eastern Long Island. At petitioners' request, petitioners' expert witness rendered his initial opinion concerning the value of the subject parcel at the time the donation was made in 1982. It was on the basis of that opinion that the subject parcel was determined by petitioners to have a value of approximately $ 750,000 at the time of the donation. That opinion of petitioners' expert witness was set forth in a brief affidavit that contains little supporting detail or analysis. Subsequently, petitioners' expert witness submitted a second report which also lacks sufficient detail to support his determination of value. In a third report, submitted prior to trial, petitioners' expert witness finally explained various adjustments that apparently served as the basis for his original valuation of the subject parcel. The report of respondent's expert witness is carefully prepared with supporting detail set forth in the report. Each expert witness used the market data or comparable sales approach in valuing the 4.9-acre parcel. Each expert agrees that the highest and best use of the parcel in June of *237 1982 was for further subdivision and development into three residential lots. After sales of comparable parcels were identified, adjustments to the sales prices thereof were make by each expert to reflect differences between the comparable parcels and the subject parcel. Petitioners' expert make five adjustments to account for the following: (1) Date of sale (to account for inflation), (2) proximity to and view of the ocean, (3) view and character of adjacent property, (4) subdivision costs, and (5) access to public roads. No adjustment was made by petitioners' expert to account for the size of comparable parcels in comparison to the subject parcel. Respondent's expert made the following four adjustments to account for differences between his comparable parcels and the subject parcel: (1) Size or per-acre adjustment, (2) date of sale, (3) proximity to and view of the ocean, and (4) subdivision costs. The comparable parcels used by each expert were different except for one parcel that was used by both experts. To illustrate the adjustments each expert made to his comparable parcels, we have set forth below the respective adjustments that each expert made to the sales price of *238 the one parcel that both experts treated as comparable to the subject parcel: Property
South of Daniels Lane
Size
2.6 Acres
Type of Property
Oceanfront
Date of Sale
August 1982
Sales Price
$ 365,000
Adjustments to Fair Market Value of Comparable Parcel To Account For Differences with Subject Parcel: Petitioners'
Respondent's
Adjustments For
Expert
Expert
Size ($ per acre)
$ 0 $ 140,385
Date of Sale [3]
0 0
Location:
Ocean View
- 45%
- 30%
Side View
+ 10%
0
Subdivision Costs
-  3%
- 20%
Access to Public Road
+  5%
0
Total Adjustment Percentage
- 33%
- 50%
Using his total adjustment percentage, petitioners' expert concluded that this comparable sale indicated a value of $ 244,550 for each of the three parcels into which the subject parcel could be divided, [4] and he multiplied that figure by a factor of three (to reflect the fact that the parcel donated *239 could be divided into three parcels). Based on this computation, petitioners' expert calculated that the subject parcel had a fair market value on June 9, 1982, of approximately $ 750,00. Using his total adjustment percentage, respondent's expert concluded that the sale of the comparable parcel indicated a value per acre for the subject parcel of $ 70,192, [5] and he multiplied that figure by five to reflect the fact that the parcel consisted of approximately five acres. Based on his computation, respondent's expert calculated that the subject parcel had a fair market value on June 9, 1982, of $ 350,000. *240 We cannot agree completely with the appraisal of either expert. The most serious defect with the appraisal of petitioner' expert is his failure to amke an adjustment for the size of the comparable parcels in relation to the size of the three parcels into which the subject parcel could be sudivided. We also disagree, generally, with his adjustments for "side view" and for "access to public roads." Most of the property outside Southampton consists of large parcels in rural settings, with dirt or unpaved access roads, and those factors do not, in our opinion, have a significant effect on value. The appraisal of respondent's expert makes excessive adjustments for the size of the subject parcel in comparison to comparable parcels. Respondent's expert makes adjustments for size based strictly on the dollars per acre of what he regards as comparable sales. When considering relatively large parcels of property for development into multi-acre residential parcels, we believe that a strict per-acre comparison with comparable sales is not necessarily indicative of the value of the parcel being valued. For example, the mere fact that the comparable parcel analyzed in the above example consisted *241 of 2.6 acres does not necessarily mean that each acre thereof would be valued on a pro rata basis based on a recent sale of the entire parcel. We agree that size adjustment must be made, but they should not be based upon a formalistic analysis that equates in every case a separate 1/2-acre parcel to a 1/2-acre portion of a 3-acre parcel. The appropriate size adjustments to be made in this case should take into account the fact that the parcels in the immediate vicinity of the subject parcel are large, multi-acre parcels and that other factors being equal, there would not likely be a significant difference in the market value between a 2-acre parcel and a 2-1/2-acre parcel. Based on our analysis of the reports and testimony of each expert witness, we conclude that the subject parcel, to be subdivided into three 1.6-acre parcels, had a value of $ 514,650 on the relevant valuation day. We compute that value primarily on the basis of the comparable parcel described above that was used by each expert, with adjustment indicated below for size, location, and subdivision costs: Sales Price of Comparable Parcel
$ 365,000 Adjustments:
Size of Parcel
- 20%
Location
- 28%
Subdivision Costs
- 5%
Total % Adjustment
- 53%
Total $ Adjustment
$ 193,450 Total Value Per Parcel
$ 171,550 Total Value for Subject Parcel
$ 514,650 *242 Addition to Tax and Additional Interest
Section 6621(c) provides an increase in the interest rate due on substantial underpayments of tax (underpayments that exceed $ 1,000) that are "attributable to one or more tax motivated transactions." Sec. 6621(c)(1) and (2). For purposes of section 6621 (c), "tax motivated transactions" include a "valuation overstatement" as defined in section 6659(c). Section 6659 provides an addition to tax "if the value of any property * * * claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation." Sec. 6659(c). The addition to tax under section 6659 is equal to 10, 20, or 30 percent of the tax underpayment that is attributable to the valuation overstatement depending on the percentage by which the value of the property claimed on the return exceeds the amount determined to be the correct value. Neither the Code nor the regulations address how a valuation overstatement is to be computed in the case of partners in general and limited partnerships (i.e., at the partners partnership level). This Court, however, has treated section 6659(c) as applying at the partnership, rather than at the *243 partner level. See Taube v. Commissioner,88 T.C. 464, 489 n. 35 (1987); Helba v. Commissioner,87 T.C. 983, 1015 (1986). In this case, Alson Land Associates, of which petitioner Alvin Silverman was a direct partner and the remaining petitioners were indirect partners with respect to the subject parcel, claimed a value on the partnership return of $ 750,000. We have concluded that the proper value of that parcel was $ 514,650. The $750,000 claimed value is 146 percent of the amount determined to be the correct valuation therefor. Because the value claimed is less than 150 percent of the amount determined to be the correct value, respondent's addition to tax under section 6659 and additional interest under section 6621 (c) are not sustained. Decision will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners have been consolidated herein: Alvin Silverman and Selma Silverman, docket No. 15239-87; Susan Alpern Trust, Fred Schwartzstein, Successor Trustee, docket No. 15628-87; and Jerome Alpern and Enid L. Alpern, docket No. 15629-87. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
3. Neither expert made an inflation adjustment in evaluating this particular comparable parcel because the sal thereof in August of 1982 was regarded as essentially simultaneous to the relevant valuation date of June 9, 1982.↩
4. Petitioners' expert made his computation as follows: Negative adjustment of 33 percent times the $ 365,000 sales price of the comparable parcel equals a total adjustment of $ 120,450. Subtracting $ 120,450 from $ 365,000 equals $ 244,550. ↩
5. Respondent's expert made his computation as follows: To make his adjustment for size, the total $ 365,000 sales price of the comparable parcel was divided by 2.6 acres, indicating a per-acre value of $ 140,385. His negative adjustment for the other factors was 50 percent which he applied to $ 140,385, to arrive at a per-acre value for the subject parcel of $ 70,192. ↩