THOMAS G. MURPHY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Murphy v. Commissioner
Docket No. 19941-89
United States Tax Court
T.C. Memo 1991-276; 1991 Tax Ct. Memo LEXIS 319; 61 T.C.M. (CCH) 2935; T.C.M. (RIA) 91276; June 18, 1991, Filed *319 Decision will be entered under Rule 155. Gregory W. MacNabb, for the petitioner. Robert A. Johnson, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
for 1985 and
for 1985 and
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Year
Deficiency
for 1986
for 1986
Sec. 6659 [2]
Sec.6661
1985
$ 97,869
$ 4,893
50% of interest
$ 29,361
$ 23,792
due on $ 95,168
1986
$ 34,286
$ 1,714
50% of interest
$ 10,286
$  8,572
due on $ 34,286
This case concerns petitioner's donation of a 90-inch-high sandstone rock sculpture, *320 entitled "The Malibu Rock - A Tribute To John Wayne," or "Life, Time, Light," to Lubbock Christian College, now known and hereinafter referred to as Lubbock Christian University or the University. The specific issues for decision are: (1) Whether petitioner's donation of the rock sculpture to Lubbock Christian University was completed in 1985, as petitioner contends, or in 1986, as respondent contends; (2) the fair market value of the sculpture at the time of donation; (3) whether petitioner is liable for additions to tax for negligence or intentional disregard of rules and regulations; and (4) (a) whether petitioner is liable for additions to tax under section 6659 for valuation overstatements; and if not, (b) whether petitioner is liable for additions to tax under section 6661 for substantial understatements of income tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Scottsdale, Arizona, at the time he filed his petition. He timely filed individual Federal income tax returns for 1985 and 1986. He is an entrepreneur as well *321 as the chief executive officer of Tom Hopkins International, which promotes motivational and self-help seminars and tapes, and trains individuals to fulfill their highest potential. Petitioner's Acquisition of "The Malibu Rock"
In early 1979, the California Department of Transportation removed a large sandstone outcropping (weighing over 100 tons) protruding from a cliff approximately 300 feet above a group of houses and the Pacific Coast Highway near Malibu, California. The process received extensive media attention, and the removed boulder was dubbed "The Malibu Rock." Brett Livingstone-Strong (Strong), an artist and sculptor, purchased a chip off the removed boulder for $ 100. Using pneumatic jack hammers and chisels of various sizes, he carved, in a public setting, the face of John Wayne on the boulder. The carving took 70 days to complete; it received considerable public attention since John Wayne was ill, and some believed his death was imminent. The sculpture (hereinafter referred to as the rock sculpture or the John Wayne rock sculpture) was entitled "The Malibu Rock - A Tribute To John Wayne" or "Life, Time, Light." Petitioner saw promotional as well as financial *322 opportunities in acquiring Strong's sculpture. Therefore, in 1979, petitioner agreed to acquire the John Wayne rock sculpture from Strong by paying various of Strong's expenses, by promoting the rock sculpture to enhance its value, and by providing Strong with financial support to enable him to bring his artistic career into fruition. In connection with the promotion of the John Wayne rock sculpture, petitioner arranged for brochures to be published, which stated that petitioner had paid Strong $ 1 million for the sculpture. Petitioner paid to have a building constructed at Manns Chinese Theatre in Hollywood to house and display the sculpture near John Wayne's handprints in the sidewalk. He also paid the expenses required for a motorized float to transport the rock sculpture as part of the Hollywood parade. Petitioner paid to have 27 bronze replicas of the rock sculpture cast, some of which he sold and some of which he gave away as presents. Petitioner opened a checking account at Valley National Bank of Arizona, captioned "The Million Dollar Rock," into which he deposited, over an extended time period, approximately $ 100,000. Numerous checks from this account were written *323 directly to Strong for his living expenses; others were written to third parties for unspecified purposes. The checks to Strong totalled approximately $ 13,000. Since petitioner's "purchase" of the John Wayne rock sculpture, petitioner and Strong have had a close and continuous working relationship. Petitioner has acted as Strong's banker or patron with respect to other works of art created by Strong, most notably a bronze statue of John Lennon and a monument of red, white, and blue marble displaying a bald eagle and various symbols of the United States Presidency and Constitution (hereinafter referred to as the Presidential Monument). Petitioner's Donation of The Rock Sculpture
In the summer of 1985, petitioner offered to donate the rock sculpture to Pepperdine University. Pepperdine University declined the offer, citing a lack of space to exhibit the sculpture. Petitioner then contacted Dr. Steven Lemley, president of Lubbock Christian University. By letter dated December 27, 1985, petitioner offered to donate the John Wayne rock sculpture to Lubbock Christian University, effective December 31, 1985, on the condition that the University use it solely for educational *324 purposes and not sell or otherwise dispose of the gifted sculpture for a period of 2 years from receipt. The letter requested the University to acknowledge acceptance of the gift and the aforementioned restrictions by having the University's president sign and return the letter to petitioner. Dr. Lemley signed and returned to petitioner the December 27, 1985 letter. By letter dated January 17, 1986, Dr. Lemley further acknowledged acceptance of the gift and stated that the sculpture would not be disposed of "in any way during the next two years." The letter further stated that Dr. Lemley expected the rock sculpture to be "a permanent resident" of the University. The rock sculpture contains numerous breakages or flaws on the left side of John Wayne's face. Although at the time of donation Strong had completed the rock sculpture, it was anticipated that a cast portrait mask of John Wayne, to be paid for by the University, would be added to the sculpture. On February 3, 1986, Spence Price, controller of Tom Hopkins International, wrote to Dr. Lemley, on behalf of petitioner, stating: We are still trying to decide what to do about the timing of the donation of the John Wayne *325 Malibu Rock. We have discussed the timing of the donation with our tax attorney. We are still not sure if it should be a 1985 or 1986 donation. We would advise you, therefore, to delay any publicity of the donation until such time as we may know better when the actual donation can take place. If you have any questions, please let me know.
The rock sculpture was carried on Lubbock Christian University's books as a December 1985 gift. It is included under the University's umbrella property and liability policy as an asset of the University. The sculpture has remained in storage in El Monte, California, since its donation to the University; the University has paid all storage costs since January 1986. Lubbock Christian University plans to permanently house the rock sculpture in a new library addition, which is currently under construction. Valuation Experts
Bernard Ewell
Petitioner's expert witness, Bernard Ewell, is a senior member of the American Society of Appraisers (the highest professional designation awarded by that organization), and, among other designations, a member of the Colorado Foundation for the Arts. Ewell's written report and testimony, which *326 were based on conversations and information obtained from Strong and petitioner, contained numerous inaccurate statements. In determining the value of the John Wayne sculpture, Ewell believed that Strong produced significant sculptures and received commissions from others as follows: * In 1980: a life-size bronze sculpture of Lawrence Welk commissioned by the Teleklew Corporation for $ 150,000; * In 1981: a life-size bronze sculpture of John Lennon, replacement cost $ 625,000; $ 400,000 purchase offer received; * In 1984: a Los Angeles-Nagoya, Japan Sister City Monument commissioned by the City of Los Angeles and installed for $ 100,000; * In 1985: the Presidential Monument commissioned by the White House Staff for $ 1 million; and * In 1985: an Australian Bicentennial Monument commissioned by Australia for $ 3 million. Ewell did not verify the commission prices; the purported amounts are substantially inflated. With respect to the Presidential Monument, the White House Staff did not commission Strong to create such piece; it remains unsold, with an asking price of $ 1 million. Ewell's report failed to mention flaws on the left side of John Wayne's face. Only the right side *327 of the face is shown in the pictures contained in his report. Ewell's report stated that the sculpture has two voids where diamonds had been installed in the statue's eyes and later chipped out by a thief; such was not the case. Ewell valued Strong's John Wayne rock sculpture at $ 500,000 as of December 31, 1985. He acknowledged that his appraisal did not follow "the traditional approach in terms of being able to demonstrate and quote comparables by other artists and building a framework in the market," but rather was valued based on the "history" of the sculpture and Strong's expanding reputation. [3] He relied heavily on the purported $ 1 million commission price for the Presidential Monument, which he determined was the closest comparable work of art to the John Wayne sculpture, finding nothing sufficiently similar in published auction records to provide a comparable outside of Strong's own works. *328 Charles D. Peavy
Respondent's valuation expert, Charles D. Peavy, is a senior member of the American Society of Appraisers, as well as a member of its examination board. In addition, he is a fellow in the Incorporated Society of Valuers and Auctioneers with an expertise in the area of fine arts, and a licensed broker and auctioneer in Texas. He is also a designated member of the International Society of Appraisers. Peavy was unable to find references to Strong or his works through standard sources. [4] Strong was neither listed with any gallery in The 1985 Annual Guide to Galleries, Museums, and Artists, nor did he sell any work that could be documented and verified through normal sources used in the field. As a result, Peavy believes that Strong is not a significant artist and had no broad-based representation by art gallery dealers prior to or during the year of donation. *329 Upon being given copies of Strong's biography, and a list of comparable sales used by Ewell, Peavy attempted to verify those sales. He was able to verify only two sales of Strong's works: (1) The "Lawrence Welk" bronze, purchased for "considerably less than" $ 100,000 (the sale also included a second casting); and (2) the "Los Angeles-Nagoya, Japan Sister City Monument," which a private group commissioned for less than $ 100,000. Peavy opined that the quality of Strong's John Wayne rock sculpture is inferior to the work of established artists in the carved sandstone medium, such as Seiji Kunishima. Peavy found the sculpture to be "disturbingly asymmetrical" and "[missing] parody in its grotesque chiseling." In this regard, Peavy noticed the following losses to the face and head: (1) Left temple missing; (2) terminus of left eyebrow missing; (3) triangular or wedge-shaped area missing below left eye socket; (4) left cheek missing; and (5) left side of chin missing. Peavy found no documentable sales of Strong's works at a price above $ 100,000 prior to or at the time of donation. He could not verify many of the sales and commissions attributed to Strong, and with respect to those *330 commissions or sales which he was able to verify, he found the claimed prices grossly inflated. Peavy valued the sculpture through documentable sales of other artists' sculptures. He found that auction sales between 1983 and 1985 indicated that sculptural works by artists having greater reputations than Strong (such as Sandro Chia, Frank Gallo, and Red Grooms) sold for less than $ 50,000. [5]
*331 In Peavy's opinion, an artist somewhat comparable with Strong is Seiji Kunishima, a contemporary sculptor whom Peavy believes has a greater reputation in the California area than Strong. Peavy stated that Seiji Kunishima has had continuous listings of gallery representations in the Annual Guide to Galleries, Museums and Artists since 1985. One of Seiji Kunishima's works, "Stacking Stones," was commissioned by the San Francisco International Airport (where it is permanently installed). This work is larger than Strong's John Wayne sculpture, and was commissioned for more than $ 100,000. Peavy opined that the fair market value of the rock sculpture at the time of donation was no greater than $ 30,000. Petitioner's 1985 and 1986 Tax Returns
Petitioner claimed a charitable contribution deduction for the donation of Strong's John Wayne rock sculpture to Lubbock Christian University on his 1985 tax return. He used Ewell's $ 500,000 valuation as the amount of the donation. Because he was unable to utilize the entire $ 500,000 as a 1985 charitable contribution deduction, he carried over the unused amount to 1986. In his notice of deficiency for 1985 and 1986, respondent disallowed *332 petitioner's claimed charitable contribution deduction, asserting that petitioner established neither the date of donation nor the fair market value claimed. OPINION Section 170(a) allows a deduction for a gift contributed to a qualified charitable organization. Here, Lubbock Christian University's status as a qualified charitable organization is unquestioned. Generally, an individual may only deduct charitable contributions to the extent that they do not exceed 50 percent of adjusted gross income. Sec. 170(b)(1)(A), (F). Any excess charitable contributions are carried forward over the following 5 successive years and are deductible subject to the limitations contained in section 170(d)(1)(A). Date of Donation
Initially, we must determine whether petitioner made a completed gift of the rock sculpture to Lubbock Christian University on December 31, 1985. In determining the existence and timing of a charitable contribution, we apply the same analysis as that in determining the existence and timing of a gift. We have consistently held that there are six essential elements of a bona fide inter vivos gift. These six elements are: (1) a donor competent to make the gift; *333 (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, in praesenti; (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee * * *
Guest v. Commissioner, 77 T.C. 9, 15-16 (1981), quoting Weil v. Commissioner, 31 B.T.A. 899, 906 (1934), affd. 82 F.2d 561 (5th Cir. 1936). Here, the parties agree that the first, second, and sixth elements of an inter vivos gift have been satisfied. Respondent, however, argues that petitioner was not divested of dominion and control over the sculpture because of the condition that the University not dispose of the rock sculpture for a 2-year period. Respondent further argues that such restriction has an adverse *334 effect on the sculpture's value. Petitioner, on the other hand, argues that pursuant to section 1.170A-1(e), Income Tax Regs., if an interest in property passes to, or is vested in, a charitable organization on the date of the gift, and the interest would be defeated by the subsequent performance of some act or the happening of some event, the possibility of occurrence of which appears on the date of the gift to be so remote as to be negligible, the deduction is allowable. Dr. Lemley testified that the University had no intention of selling the rock sculpture within the 2-year proscribed period; hence, insofar as the University was concerned, the 2-year nontransferability restriction was meaningless. Petitioner testified that he included the condition on the advice of his attorney and that he did not intend the sculpture to revert back to him. While we are disturbed by the implications of the February 3, 1986 letter from Spence Price (presumably with petitioner's consent) to Dr. Lemley, relating to whether the donation should be considered a 1985 or 1986 donation, we found the testimony of Dr. Lemley and petitioner as to the date of donation credible and convincing. Petitioner *335 acknowledges that the rock sculpture was not physically delivered to Lubbock Christian University in 1985, nor by the time of trial. He argues that physical delivery is not necessary where it would be impractical. We agree. Where the donor and the donee both acknowledge the gift, and no third party is involved in the transaction, the reason for actual delivery is absent. See Sandler v. Commissioner, T.C. Memo 1986-451. Due to lack of space on campus, the rock sculpture was placed in storage in El Monte, California, and the University has been paying the storage fees. We are satisfied and thus find that petitioner made a completed gift of the rock sculpture to Lubbock Christian University on December 31, 1985. [6]
*336 Fair Market Value
Section 1.170A-1(c)(1), Income Tax Regs., provides that if property other than money is contributed to charity, the amount of the contribution is the fair market value of the property at the time of contribution, reduced as provided by section 170(e)(1). Fair market value is the "price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts." Sec. 1.170A- 1(c)(2), Income Tax Regs. The fair market value of donated property is a question of fact to be determined from the entire record. Goldstein v. Commissioner, 89 T.C. 535, 544 (1987); Skripak v. Commissioner, 84 T.C. 285, 320 (1985); Zmuda v. Commissioner, 79 T.C. 714, 726 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). Where respondent has disallowed a charitable deduction, the taxpayer must show error in respondent's determination. Rule 142(a). As expected, the parties take diametrically opposite positions as to the fair market value of the rock sculpture. Valuation is an inexact science, and *337 each case necessarily turns on its own particular facts. Messing v. Commissioner, 48 T.C. 502, 512 (1967). In most cases, each party presents one or more expert witnesses who argue a valuation formula that should be used, and testify that the approach used by the opposing side's expert is misguided. Petitioner and respondent each rely primarily upon the valuations of their respective experts. However, we are not bound by the opinion of any expert witness when that opinion is contrary to our own judgment. Barry v. United States, 501 F.2d 578, 583 (6th Cir. 1974); Chiu v. Commissioner, 84 T.C. 722, 734 (1985). We may accept or reject expert testimony as we find appropriate in our best judgment. Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir. 1976), affg. a Memorandum Opinion of this Court. Due to the lack of documentable sales of Strong's works, Peavy attempted to find documentable sales of sculptures by other, more well-known artists. He believes that the most active marketplace for a theoretical sale of Strong's John Wayne rock sculpture would be the art auction market. (In this regard, *338 see Mathias v. Commissioner, 50 T.C. 994, 999 (1968), wherein we stated that auction prices are a good indication of the value of art.) Ewell, on the other hand, claims that the closest comparable to the rock sculpture is Strong's Presidential Monument, which he believes the White House Staff commissioned for $ 1 million. But the White House Staff did not commission this work; thus, the premise upon which Ewell's value is based is seriously flawed. The record convincingly shows that petitioner and Strong attempted to enhance the value of the rock sculpture, as well as develop Strong's career, by publicity and "hype." The elaborate promotional brochure states that petitioner paid $ 1 million for the John Wayne rock sculpture (and the sculpture was promoted as The Million Dollar Rock), when in fact such was not true. (The record does not indicate the exact amount petitioner paid for the sculpture, as opposed to the amount petitioner paid to promote the sculpture.) Prior to trial, we suggested to counsel for both parties that settlement, rather than trial, might be a more efficacious means to dispose of this case. They did not heed this suggestion. While we *339 are not convinced of the correctness of either Ewell's or Peavy's valuation of the rock sculpture, our obligation is to resolve the dispute in favor of one party or the other. And as noted in this regard, petitioner bears the burden of proving the fair market value of the sculpture on the date of donation. Rule 142(a). In Buffalo Tool & Die Mfg. Co. v. Commissioner, 74 T.C. 441, 452 (1980), we stated: the Court may find the evidence of valuation by one of the parties sufficiently more convincing than that of the other party, so that the final result will produce a significant financial defeat for one or the other, rather than a middle-of-the-road compromise which we suspect each of the parties expects the Court to reach. * * * We do not intend to avoid our responsibilities but instead seek to administer to them more efficiently -- a factor which has become increasingly important in light of the constantly expanding workload of the Court.
Finding respondent's valuation more credible than petitioner's, we hold that the fair market value of Strong's John Wayne sculpture on the date of donation (taking into account the 2-year restriction on transferability) *340 was $ 30,000. Additions to Tax
Section 6653(a)
The next issue for decision is whether petitioner is liable for the additions to tax provided by section 6653(a)(1) and (2) in 1985, and section 6653(a)(1)(A) and (B) in 1986. Section 6653(a)(1), which was renumbered 6653(a)(1)(A) for taxable years in which a return is due after December 31, 1986, provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2), which was renumbered 6653(a)(1)(B) for taxable periods for which a return is due after December 31, 1986, provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax, in addition to the 5-percent addition provided by section 6653(a)(1), an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence. The addition to tax under section 6653(a)(2) is imposed for the period beginning on the last day prescribed by law for *341 payment of such underpayment. Sec. 6653(a)(2)(B). Within the meaning of section 6653(a), negligence has been defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985), quoting Marcello v. Commissioner, 380 F.2d 494, 506 (5th Cir. 1967). Petitioner argues that he is not liable for the addition to tax for negligence or intentional disregard of rules and regulations because: (1) No deficiency in fact exists, and (2) he relied in good faith upon the advice of Ewell, his appraiser. Mere reliance on an appraiser or expert in a matter does not automatically shield a taxpayer from the negligence addition; such reliance must have been reasonable and in good faith. Horn v. Commissioner, 90 T.C. 908, 942 (1988); Vesper v. Commissioner, T.C. Memo 1989-358. Petitioner and/or Strong supplied Ewell with the sales and price information used in his appraisal. And it is apparent that in rendering his opinion, Ewell believed the puffing fed to him. Petitioner promoted the sculpture with a view *342 towards enhancing its value. He knew (or should have known) that the information furnished to Ewell would result in Ewell's giving the sculpture a greater value. In view of the aforesaid, petitioner's reliance upon Ewell's valuation is not sufficient to shield him from the negligence addition. Petitioner failed to prove that his action conformed to what a reasonable and ordinarily prudent person would do under the circumstances. Since petitioner failed to carry his burden of proof, he is liable for the additions to tax for negligence under section 6653(a), as determined by respondent. Section 6659
The next issue for decision is whether petitioner is liable for the section 6659 additions to tax. Under section 6659(c), a valuation overstatement exists if the value of any property claimed on a return is 150 percent or more of the amount determined to be the correct valuation of such property. For this addition to tax to apply, the underpayment for the taxable year attributable to the valuation overstatement must be at least $ 1,000. Sec. 6659(d). Further, with respect to charitable deduction property, the amount of the addition to tax is equal to 30 percent of the underpayment. *343 Sec. 6659(f)(1). Petitioner argues that with regard to the years before us, there was no valuation overstatement with respect to the donated property. In view of our finding that the value of the rock sculpture on the date of donation was $ 30,000, petitioner's argument is obviously without merit. The addition to tax pursuant to section 6659 is applicable. Section 6661(a)
Section 6661(a) imposes an addition to tax when there is a "substantial understatement of income tax for any taxable year." [7] An understatement is substantial when the understatement exceeds the greater of $ 5,000 or 10 percent of the amount of tax required to be shown on the return. Sec. 6661(b)(1)(A). The amount of the addition to tax under section 6661(a) is equal to 25 percent of any underpayment attributable to the substantial understatement. See Pallottini v. Commissioner, 90 T.C. 498 (1988). *344 Pursuant to section 6661(b)(3), for purposes of determining the amount of the section 6661(a) addition to tax, that portion of the substantial understatement on which an addition to tax is imposed under section 6659 is not taken into account. Because the section 6659 addition to tax is applicable, the addition to tax under section 6661 is not. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent acknowledges that if the addition to tax under sec. 6659 is applicable, the addition to tax under sec. 6661↩ is not.
3. In justifying his $ 500,000 value for the rock sculpture, Ewell stated: It is difficult to imagine any other unique sculpture, with the exception of the Statute of Liberty, receiving more publicity and exposure than did "The Malibu Rock-Tribute to John Wayne" from the time it was a boulder protruding from a cliff through the public sculpture process and its "display" at the Chinese Theatre to the time of its donation to Lubbock Christian College. This publicity resulted in the rapid development of the artist's career and the appreciation of his arts' [sic] value from early 1979 to the time of donation - December 1985.↩
4. Peavy used standard market indices of art sales such as R. Hislop, Art Sales Index, E. Mayer, International Auction Records, and S. Theran, Leonard's Annual Index of Art Auctions↩.
5. Eduardo Paoluzzi's 68- by 36-inch welded bronze sculpture sold at Sotheby's New York on February 27, 1985 for $ 10,450; Francois Brochet's 71-inch-high sculpture entitled "Femme Debout" failed to sell at its estimate of $ 2,000-$ 3,000 at Christie's East New York sale on December 1, 1983; Frank Gallo's 63- by 26-inch sculpture entitled "Standing Female" failed to sell at its estimate of $ 4,000-$ 6,000 at Sotheby's New York sale on November 6, 1985; Buckminster Fuller's 74-inch-high sculpture entitled "Jitterbug" failed to reach its presale estimate of $ 10,000-$ 15,000 at Sotheby's New York sale on October 1, 1985; Red Grooms' 91-inch-high sculpture entitled "Spirit of Electricity" sold for $ 4,400 (estimated at $ 5,000-$ 7,000) on November 2, 1984; and Sandro Chia's 72- by 30- by 54-inch sculpture entitled "Poet-Painter" sold for $ 46,750 (estimated at $ 45,000-$ 60,000) at Sotheby's New York sale on October 31, 1984.↩
6. Petitioner's December 27, 1985 letter to Dr. Lemley manifested his unmistakable intent to make a gift on December 31, 1985. Dr. Lemley testified that his letter of January 17, 1986, merely acknowledged receipt of the gift and that he had already accepted the gift in 1985 by indicating his approval at the bottom of petitioner's December 27, 1985 letter shortly after receiving it in overnight mail.↩
7. An understatement occurs when the amount of tax shown on the return, less any rebate (within the meaning of sec. 6211(b)(2)), is less than the amount of tax required to be shown on the return. See sec. 6661(b)(2)(A)↩.