COMTEC SYSTEMS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Comtec Sys. v. Commissioner
Docket No. 24015-91
United States Tax Court
T.C. Memo 1995-4; 1995 Tax Ct. Memo LEXIS 6; 69 T.C.M. (CCH) 1581; January 9, 1995, Filed *6 Decision will be entered under Rule 155. For petitioner: Magda Abdo-Gomez. For respondent: Avarian R. McKendrick. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined a $ 172,888 deficiency in petitioner's Federal income tax for the taxable year ending August 31, 1988 (fiscal year 1988). Following concessions, the issue for decision is whether petitioner may deduct as reasonable compensation amounts it paid to Vernon and Reda Beard and their adult children (as directors of petitioner) in fiscal year 1988. The following chart shows the positions of the parties and the amount of deduction allowed by this opinion: Allowable Deduction for Compensation
Paid to Vernon and Reda Beard Fiscal Year 1988
Petitioner's position
Vernon Beard
$ 683,368
Reda Beard
56,881
Directors
7,500
Respondent's determination
in the notice of deficiency
Vernon Beard
$ 243,368
Reda Beard
26,881
Directors
3,500
Amount of deduction
allowed by this opinion
Vernon Beard
$ 683,368
Reda Beard
56,881
Directors
3,500
Section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to *7 the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioner
Petitioner is a corporation, the principal place of business of which was in Florida when it filed the petition. Petitioner engineers, designs, and manufactures electronics and telecommunications products. It researches, develops, produces, ships, and supports its products. Some products are complete systems. Others are subassemblies, such as customized printed circuit boards. Most of petitioner's products use microprocessors that require computer programming. Petitioner either makes its own blueprints or works from a customer's blueprints. An example of a product petitioner developed is a telephone which reads credit cards. Kenneth Heath and Vernon Beard founded petitioner's predecessor, Comtec, a partnership, in 1976, with a total capital investment of $ 3,000. Kenneth Heath and Vernon Beard each owned a 50-percent interest in the partnership's profits, capital, and losses. Vernon Beard and his wife, Reda Beard, operated Comtec as a sole proprietorship beginning in 1977. The sole proprietorship completely absorbed the partnership *8 business, assets, and liabilities. Vernon and Reda Beard incorporated Comtec in Florida on August 17, 1979. The corporation completely absorbed the sole proprietorship's business, assets, and liabilities. Petitioner's business did not change when Vernon and Reda Beard incorporated it. Petitioner is a fiscal year taxpayer. Its fiscal year ends on August 31. Vernon Beard was petitioner's president, secretary treasurer, engineer, and sole stockholder. Reda Beard was petitioner's vice president. Petitioner did not declare or pay dividends from 1979 to 1988. In 1976, petitioner had sales of $ 18,000 and one employee other than Vernon and Reda Beard. It used the services of a consulting engineer from 1977 to 1990. Petitioner paid the consulting engineer $ 25 per hour from 1977 to 1984 and $ 35 per hour from 1984 to 1988. Petitioner hired a staff engineer in 1987. Petitioner paid the staff engineer wages of $ 38,000 per year according to a written agreement. Petitioner also paid the staff engineer bonuses of $ 10,000 in 1987 and $ 19,500 in 1988. Petitioner had specific criteria for bonus payments which it applied to all employees except Vernon and Reda Beard. Petitioner *9 did not pay bonuses to Vernon and Reda Beard. Petitioner paid quarterly bonuses to all other employees. In fiscal year 1988, petitioner paid employee bonuses of $ 61,000, of which $ 10,000 went to one programmer. Petitioner grew to 15 employees other than Vernon and Reda Beard and had sales of $ 2.5 million in 1988. In fiscal year 1988, petitioner's employee workforce (not including Vernon and Reda Beard) included seven assembly line workers, one buyer, one engineer, two test technicians, one quality control employee, and one software programmer. The following chart shows petitioner's gross sales, net income, and compensation paid to Vernon and Reda Beard: Vernon
Reda
Gross Taxable
Beard's Beard's Year
Sales [1]
Income [1]
Compensation
Compensation
1976
$   18,171
$   9,464
$   4,732
-0-
1977
53,801
8,773 8,773
-0-
1978
82,022
27,374 27,374
-0-
1979
12,000
-0-
1980
53,546
(3,506)
11,567
-0-
1981
99,306
7,017 13,933
-0-
1982
63,609
8,887 18,173
-0-
1983
164,954
3,035 19,250
5,100
1984
279,191
7,078 23,747
10,400
1985
336,964
37,753 28,496
13,700
1986
246,626
(13,515)
31,000
13,500
1987
1,255,307
51,381 86,055
29,300
1988
2,433,788
44,922 683,368
56,881
Total
5,087,285
188,663 968,468
128,881
*10 Petitioner had retained earnings as follows: Retained Earnings
Fiscal
Year
Amount 1981
$  3,213
1982
11,231
1983
13,794
1984
20,884
1985
58,637
1986
45,122
1987
90,553
1988
128,927
Vernon and Reda Beard worked long hours for low compensation until petitioner was financially stronger. In fiscal year 1988, petitioner paid Vernon and Reda Beard for their services to petitioner in prior years for which they had been underpaid (catchup payments). In fiscal year 1988, the members of petitioner's board of directors were Vernon Beard and his and Reda Beard's children, Donese and Kevin Beard. Donese and Kevin Beard were not officers or employees of petitioner in fiscal year 1988. Petitioner did not keep written records of board meetings or conferences or of decisions about employee salaries and bonuses. Only one employee (petitioner's staff engineer) had a written contract. Vernon and Reda Beard did not have written employment contracts. 2. Vernon Beard
Vernon Beard graduated from high school in 1954. He served in the U.S. Navy where he trained for 9 months as an electronics technician. He received a bachelor of science degree from the University *11 of Florida in electrical engineering in 1971. From 1971 to 1976, he headed the engineering department and was an electrical engineer for Communication Equipment and Engineering Corp. (CEECO). At CEECO he was liaison to the production department and did field service, some sales, and some purchasing. CEECO had 30 to 35 employees in 1975. It was a branch of a larger company located in Chicago and was a competitor of petitioner. CEECO has been in business since 1947. CEECO paid Vernon Beard the following salary: Year
Amount
1971
$  6,345.00
(half-year)
1972
12,338.88
1972
16,137.60
1974
16,116.80
1975
19,430.00
Petitioner employed Vernon Beard full time from 1976 until the date of trial. He worked for petitioner an average of about 70 hours per week. Vernon Beard has held every position in petitioner except those relating to accounting. He directed the research and development of engineering projects, production, quality control, tests and calibrations, shipping and receiving, and marketing. He patented inventions and designed products for customers to whom he assigned patent rights. He obtained petitioner's customers. He set personnel and compensation policies. *12 Petitioner has kept its customer base and remained competitive due to Vernon Beard's talent and effort. Vernon Beard was not a licensed professional engineer in Florida or a member of any professional engineering associations. 3. Reda Beard
Reda Beard graduated from high school. She attended business college for 2 years and received a completion certificate. She took business courses at Broward Community College in 1974. Reda Beard was a bookkeeper and secretary at CEECO before she worked for petitioner. She has been petitioner's bookkeeper since 1976. She worked for petitioner an average of 10 to 12 hours a day, 6 days a week. Reda Beard uses basic accounting principles in her job. Her duties have included preparing petitioner's statements, books, financial records, quarterly statements, balance sheets, accounts receivable, accounts payable, and payroll. In 1988 Reda Beard handled petitioner's finances and accounting. She was responsible for payroll taxes, sales taxes, banking, collection, insurance, supplies, and personnel matters. During petitioner's early years, Reda Beard soldered, cleaned, inspected, and shipped printed circuit boards, prepared customer *13 invoices, hired employees, and cleaned the business premises. 4. Kevin and Donese Beard
Vernon and Reda Beard's children, Kevin (age 26 in 1988) and Donese (age 24 in 1988), became members of petitioner's board of directors oh July 10, 1988. At that time, Kevin Beard had some experience as a graphic artist. Donese Beard worked full time as a manager for United Parcel Service. Vernon Beard spoke with Kevin and Donese Beard about petitioner about once a week. Kevin Beard gave petitioner some advice about graphic layouts. He discussed petitioner's employee compensation with his father several times. Donese Beard gave petitioner some advice about shipping procedures. She discussed petitioner's personnel matters with her father several times. Petitioner did not employ Kevin or Donese Beard other than as directors. At the time of trial, Kevin Beard was deceased and Donese Beard had been petitioner's operating manager for about 9 months. OPINION 1. Background
A taxpayer may deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered." Sec. 162(a)(1). Compensation payments are deductible if they are: (a) Reasonable, *14 and (b) purely for services. Sec. 162(a)(1); Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1243 (9th Cir. 1983), revg. and remanding T.C. Memo. 1980-282; sec. 1.162-7(a), Income Tax Regs. Respondent concedes that the payments to Vernon and Reda Beard were for services they rendered. Thus, we need only decide whether the amounts petitioner paid to Vernon and Reda Beard were reasonable. Whether amounts paid are reasonable is a question of fact. Botany Worsted Mills v. United States, 278 U.S. 282, 289-290 (1929); Estate of Wallace v. Commissioner, 95 T.C. 525, 553 (1990), affd. 965 F.2d 1038 (11th Cir. 1992). Respondent's determination is presumed to be correct, and petitioner bears the burden of proving otherwise. Rule 142(a). If petitioner proves respondent's determination to be wrong, the Court must then decide the amount of compensation that was reasonable. Pepsi-Cola Bottling Co. v. Commissioner, 61 T.C. 564, 568 (1974), affd. 528 F.2d 176 (10th Cir. 1975). Petitioner *15 deducted $ 683,368 for compensation paid to Vernon Beard in fiscal year 1988; respondent determined that it was reasonable for petitioner to pay him no more than $ 243,368 in 1988. Petitioner paid Reda Beard $ 56,881 in fiscal year 1988 for her services. Respondent determined that it was reasonable for petitioner to pay her no more than $ 26,881 in that year. Petitioner bears the burden of proving that the amount of compensation it paid to Vernon and Reda Beard is reasonable. Rule 142(a). 2. Reasonableness of Vernon and Reda Beard's Compensation
Courts have considered many factors in deciding whether the amount of compensation is reasonable, such as: (a) The employee's qualifications; (b) the nature, extent, and scope of the employee's work; (c) the size and complexity of the business; (d) a comparison of salaries paid with sales, gross income, and capital value; (e) general economic conditions; (f) a comparison of salaries to distributions to shareholders and retained earnings; (g) petitioner's salary policy to all employees; (h) petitioner's financial condition; (i) the prevailing rates of compensation for comparable positions in comparable companies; (j) compensation *16 paid in prior years; (k) whether the employee and employer dealt at arm's length; and (1) whether the employee guaranteed the employer's debt. Elliotts, Inc. v. Commissioner, supra; Kennedy v. Commissioner, 671 F.2d 167, 175 (6th Cir. 1982), revg. and remanding 72 T.C. 793 (1979); MaysonManufacturing Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949); R.J. Nicoll Co. v. Commissioner, 59 T.C. 37, 51 (1972). No single factor controls. Mayson Manufacturing Co. v. Commissioner, supra.
a. Employee's Qualifications
An employee's superior qualifications for his or her position with the business may justify high compensation. See e.g., Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1158 (1980); Dave Fischbein Manufacturing Co. v. Commissioner, 59 T.C. 338, 352-353 (1972). Vernon Beard had superior qualifications for petitioner's business. He had an appropriate educational (electrical engineering degree) and *17 employment (Navy electrical technician and engineer for a competitor) background. Respondent challenges Vernon Beard's qualifications because he has no patents, he was not petitioner's only engineer, and he was not a registered professional engineer. Contrary to respondent's position, Vernon Beard credibly testified that either he or others patented equipment he designed while employed by petitioner although he does not own the patents. Further, we do not believe that Vernon Beard must own or obtain patents for us to find that his qualifications justify high compensation. The fact that Vernon Beard sometimes used a customer's design does not detract from the fact that under his leadership, petitioner grew and became profitable. Vernon Beard was not petitioner's only engineer, but he was petitioner's key engineer. Petitioner's workload dictated the number of engineers that petitioner needed. Thus, the number of engineers does not detract from Vernon Beard's qualifications. Florida law does not require Vernon Beard to register as a professional engineer. Engineers need not register in Florida if they are regular full-time employees of a corporation whose engineering is limited *18 to the design, fabrication, or servicing of manufactured products. Fla. Stat. Ann. sec. 471.003(2)(c) (West 1991). Thus, not being a registered professional engineer does not detract from Vernon Beard's qualifications. Reda Beard's education and employment were also appropriate for her duties at petitioner. She completed business college and worked as a bookkeeper and secretary before working for petitioner. She used accounting principles in managing petitioner's finances. She was fully qualified to handle petitioner's payroll and sales taxes, banking, collection, insurance, and personnel matters. This factor favors petitioner. b. Nature, Extent, and Scope of Employee's Work
The position held by the employee, hours worked, duties performed, and the general importance of the employee to the success of the company may justify high compensation. Mayson Manufacturing Co. v. Commissioner, supra; see e.g., Elliotts, Inc. v. Commissioner, 716 F.2d at 1245-1246; American Foundry v. Commissioner, 536 F.2d 289, 291-292 (9th Cir. 1976), affg. in part and revg. in part. 59 T.C. 231 (1972); *19 Home Interiors & Gifts, Inc. v. Commissioner, supra at 1158. Vernon Beard provided highly significant services as petitioner's chief executive officer which contributed greatly to petitioner's financial growth and success. He anticipated business trends. He oversaw petitioner's daily operations. He performed engineering, design, research and development, production, quality control, logistics, personnel, and sales duties. His work required judgment, technical skill, and adaptability. Reda Beard also provided significant services to petitioner. She worked long hours. She managed petitioner's office and was primarily responsible for its books and records. She also did many other things for petitioner over the years including working on assemblies and cleaning up the premises. This factor favors petitioner. c. Size and Complexity of the Business
Courts have considered the size and complexity of a taxpayer's business in deciding whether compensation is reasonable. Elliotts, Inc. v. Commissioner, supra at 1246; Pepsi-Cola Bottling Co. v. Commissioner, 528 F.2d at 179; *20 Mayson Manufacturing Co. v. Commissioner, supra. Petitioner's business is complex. It involves engineering, design, research and development, production, and manufacture of highly technical electronic products. Petitioner overcame early setbacks to become financially successful in fiscal year 1988. This factor favors petitioner. d. Comparison of Salaries Paid With Sales, Net Income, and Capital Value
Courts have compared sales, net income, and capital value to amounts of compensation in deciding whether compensation is reasonable. Elliotts, Inc. v. Commissioner, 716 F.2d 1241 (9th Cir. 1983); Mayson Manufacturing Co. v. Commissioner, supra. Petitioner and its predecessors paid Vernon Beard minimal amounts while he helped petitioner increase its gross sales from $ 18,171 in 1976 to $ 2,433,788 in 1988. This factor favors petitioner. e. General Economic Conditions
General economic conditions may affect a company's performance, and thus indicate the extent, if any, of the employee's effect on the company. Elliotts, Inc. v. Commissioner, supra; *21 Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115 (6th Cir. 1949). There is no evidence that petitioner's success resulted from general economic conditions; the record shows petitioner's success resulted in large part from Vernon and Reda Beard's work. This factor is neutral. f. Comparison of Salaries With Distributions to Shareholders and Retained Earnings
The failure to pay more than minimal dividends may suggest that some of the amounts paid as compensation to the shareholder-employee is a dividend. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1322-1323 (5th Cir. 1987), affg. T.C. Memo. 1985-267; Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 152-153 (8th Cir. 1974), affg. T.C. Memo. 1973-130. The failure to pay dividends can be a "red flag" that invites further scrutiny by the court. Edwin's, Inc. v. United States, 501 F.2d 675, 677 n.5 (7th Cir. 1974). However, corporations are not required to pay dividends; shareholders may be equally content with the appreciation *22 of their stock caused, for example, by the retention of earnings. Owensby & Kritikos, Inc. v. Commissioner, supra; Elliotts, Inc. v. Commissioner, supra; Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. at 1162. Respondent argues that petitioner's failure to pay dividends is strong evidence that Vernon Beard's compensation was unreasonable. We disagree. Petitioner's retained earnings increased steadily from $ 3,214 in fiscal year 1981 to $ 128,927 in fiscal year 1988. This factor favors petitioner. g. Petitioner's Salary Policy to All Employees
Courts have considered salaries paid to other employees of a business in deciding whether compensation is reasonable. Home Interiors & Gifts, Inc. v. Commissioner, supra at 1159. This factor focuses on "whether the entity as a whole pays top dollar to all of its employees, shareholder- and nonshareholder-employees alike." Owensby & Kritikos, Inc. v. Commissioner, supra at 1330. A longstanding, consistently applied compensation plan is evidence that compensation *23 is reasonable. Elliotts, Inc. v. Commissioner, supra.The record is not precise in this regard. Vernon Beard paid some employees close to what he received in some years, but he did not know the exact amount. Vernon and Reda Beard did not participate in the bonus plan which petitioner provided for all other employees. However, because the record is imprecise about the amounts petitioner paid to nonshareholder employees, this factor is neutral. h. Petitioner's Financial Condition
The past and present financial condition of the company is relevant to deciding whether compensation was reasonable. Kennedy v. Commissioner, 671 F.2d at 174; Home Interiors & Gifts, Inc. v. Commissioner, supra at 1157-1158. Petitioner grew to become very profitable. This factor favors petitioner. i. Prevailing Rates of Compensation for Comparable Positions in Comparable Companies
In deciding whether the compensation in question is reasonable, we compare it to compensation paid for comparable positions in comparable companies. Elliotts, Inc. v. Commissioner, supra at 1246; *24 Mayson Manufacturing Co. v. Commissioner, supra at 119. We will discuss this factor in paragraph 2.j., below. j. Compensation Paid in Prior Years
i. In General
An employer may deduct compensation paid in a year even though the employee performed the services in a prior year. Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 119 (1930); R.J. Nicoll Co. v. Commissioner, 59 T.C. at 50-51. To currently deduct amounts paid as compensation for past undercompensation, a taxpayer must show: (i) That it intended to compensate employees for past services from current payments, and (ii) the amount of past undercompensation. Pacific Grains, Inc. v. Commissioner, 399 F.2d 603, 606 (9th Cir. 1968), affg. T.C. Memo. 1967-7; Estate of Wallace v. Commissioner, 95 T.C. at 554. Respondent contends that petitioner's compensation to Vernon and Reda Beard did not include any catchup compensation for years before 1988. We disagree. Vernon and Reda Beard worked hard and made sacrifices, including accepting low *25 pay, to establish and build petitioner's business. Vernon and Reda Beard credibly testified that petitioner intended to defer their compensation. This intent is also shown by the fact that they accepted low wages while they worked to establish petitioner. Reda Beard received no pay from 1976 to 1982. We find that Vernon and Reda Beard and petitioner intended to forgo part of Vernon and Reda Beard's compensation for services until petitioner was established and successful. Respondent points out that petitioner lacks contemporaneous records stating that the fiscal year 1988 payments were intended to be catchup payments. Courts may give little or no weight to the absence of formal board resolutions about officers' compensation in closely held corporations. Levenson & Klein, Inc. v. Commissioner, 67 T.C. 694, 713-714 (1977); Reub Isaacs & Co. v. Commissioner, 1 B.T.A. 45, 48 (1924). In Levenson & Klein Inc. v. Commissioner, supra at 714 (quoting Reub Isaacs & Co. v. Commissioner, supra at 48), we said: "Closely held corporations, as is well known, *26 often act informally, 'their decisions being made in conversations, and oftentimes recorded not in the minutes, but by action.'" Petitioner clearly intended to pay Vernon and Reda Beard in fiscal year 1988 for services rendered in prior years. ii. Expert Testimony
Both parties called expert witnesses to give opinions about what amount of compensation was reasonable. Expert witnesses' opinions may help the Court understand a subject requiring specialized training, knowledge, or judgment. Fed. R. Evid. 702; Snyder v. Commissioner, 93 T.C. 529, 534 (1989). We may be selective in deciding what part of an expert's opinion we will accept. Helvering v. National Grocery Co., 304 U.S. 282, 295 (1938); Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir. 1976), affg. T.C. Memo. 1974-285; Parker v. Commissioner, 86 T.C. 547, 562 (1986); Chiu v. Commissioner, 84 T.C. 722, 734 (1985). Petitioner called John Zdanowicz (Zdanowicz), and respondent called Ernest Gruenfeld (Gruenfeld). Zdanowicz concluded *27 that Vernon Beard would have earned a total of $ 764,335 if he had worked as an engineer for another engineering firm from 1976 to 1988. Zdanowicz assumed Vernon Beard would have worked as a midlevel engineer from 1976 to 1979 and a senior engineer from 1979 to 1988. During those years, Vernon Beard earned $ 968,468 from petitioner and its predecessors. Vernon Beard's compensation from 1976 to 1987 was about 27 percent higher (an average of $ 17,011 per year) than he would have received if he had been employed as an engineer for those years. [1] We believe this is a reasonable difference given Vernon Beard's enormous responsibility, effort, and success on behalf of petitioner. Vernon Beard's duties as petitioner's chief executive officer were clearly more demanding than those of a senior engineer. He was solely responsible for soliciting every major customer for petitioner and maintaining relations with them. As the Court of Appeals for the Sixth Circuit said in Kennedy v. Commissioner, 671 F.2d at 176: "Getting and keeping customers, is, of course, the lifeblood of any business".
*28 We believe that petitioner and Reda Beard intended to defer her compensation until petitioner could pay it. Reda Beard provided substantial services from 1976 to 1979 for which petitioner's predecessors did not pay her; from 1980 to 1982 for which petitioner did not pay her; and from 1983 to 1987, for which petitioner underpaid her. Zdanowicz provided data which showed average earnings of accounting clerks working for manufacturers in the southern United States. He concluded that she was undercompensated for all years before 1987, and that after 1988 she remained undercompensated by $ 111,175. Gruenfeld, respondent's expert, testified that it would have been reasonable to pay Vernon Beard up to $ 150,000 for services rendered in fiscal year 1988. Gruenfeld compiled some useful statistics for his report from the Almanac of Business and Industrial Financial Ratios, Robert Morris Associates, Research Institute of America, Executive Compensation Survey, and Competitive Salary Assessor. However, he applied little or no independent expertise. He did not know how the organizations produced some of the statistics in the studies, the base periods for the underlying data, the region *29 of the country from which that data arose, or the size of the cities or towns where the companies were located. He admitted that the amount of compensation varies widely depending on where the employer is located. He said he applied data based on Vernon Beard's duties and responsibilities, but he did not know what those duties were. Gruenfeld relied on some information from years after the years in issue. In 1988 petitioner had a ratio of sales to total assets of 10.43 percent, while the highest ratio in a study he used was 3.1 percent. Gruenfeld adjusted data from one survey but could not explain how he did it. Gruenfeld used a study providing compensation ranges based on the fair market value of a company's assets. However, he did not know if the asset value he used for petitioner was book or fair market value. Gruenfeld did not consider prior undercompensation in his analysis. For these reasons we give little weight to his opinion. iii. Consideration of Years Before Comtec Was Incorporated
We next decide whether petitioner may deduct undercompensation for services Vernon and Reda Beard rendered in prior years to petitioner's predecessor sole proprietorship and partnership. *30 Respondent contends that Vernon and Reda Beard are not entitled to any catchup payments for services provided before 1988. As discussed in paragraph 2.j.i. above, we disagree with respondent's position that Vernon and Reda Beard are not entitled to any catchup payments. In the alternative, respondent argues that if prior years are relevant, we may not consider compensation paid by petitioner to Vernon and Reda Beard before it was incorporated in deciding whether payments in 1988 are reasonable payments for prior service. [2] Deductions are generally allowed only to the taxable entity which generated income relating to the deductions. U.S. Asiatic Co. v. Commissioner, 30 T.C. 1373, 1380 (1958) (taxpayer corporation may not accrue and deduct salary to an individual before incorporation and may not deduct expenses to reimburse an individual for expenses when he was a joint venturer or sole proprietor). However, a corporate taxpayer may deduct compensation for services provided to a predecessor under certain circumstances. R.J. Nicoll Co. v. Commissioner, 59 T.C. at 50-51; see Young v. Commissioner, 650 F.2d 1083, 1085 (9th Cir. 1981), *31 affg. T.C. Memo. 1979-242. A corporation may deduct compensation paid in a year for services rendered in prior years to a predecessor entity if: (a) The other entity is in fact a predecessor; (b) the employee was undercompensated in those years; and (c) the successor benefited from those undercompensated services. Young v. Commissioner, supra; LaMastro v. Commissioner, 72 T.C. 377, 383-384 (1979); Bianchi v. Commissioner, 66 T.C. 324, 333 (1976), affd. by order 39 AFTR 2d 77-894, 77-1 USTC par. 9270 (2d Cir. 1977); R.J. Nicoll Co. v. Commissioner, supra at 50-51. *32 The court in Young v. Commissioner, supra, suggested in dicta that a taxpayer corporation could deduct compensation for services to a predecessor sole proprietorship if the successor completely absorbed the sole proprietorship and benefited from the undercompensated services rendered to the predecessor. In Young, the successor corporation did not completely absorb the sole proprietorship or take title to all of its assets. The sole proprietorship kept its most valuable asset. Here, petitioner completely absorbed the sole proprietorship, which had completely absorbed the predecessor partnership. We have found that Vernon and Reda Beard were undercompensated by petitioner's predecessors. Petitioner benefited from the fact that Vernon and Reda Beard were undercompensated by the partnership and sole proprietorship because the undercompensation helped petitioner to survive and grow. Petitioner's payments to Vernon and Reda Beard were for their services and not for use of capital. We conclude that petitioner may deduct compensation for services rendered to petitioner's predecessor sole proprietorship and partnership by Vernon and Reda Beard. *33 Respondent cites Young v. Commissioner, supra, and LaMastro v. Commissioner, supra at 383-384. The court in Young suggested that it would consider whether the corporation could compensate its employees for past undercompensated services as the corporate taxpayer did in R.J. Nicoll Co. v. Commissioner, 59 T.C. 37 (1972), but it did not reach the issue because, unlike the instant case, the other entity was not in fact a predecessor. Young v. Commissioner, supra at 1085. In LaMastro v. Commissioner, supra, and Bianchi v. Commissioner, supra, the taxpayers were self-employed dentists who incorporated. We found that the dentists in both cases were not underpaid and that the best evidence of their reasonable compensation was the income from their dental practices. Here, like the taxpayer in Nicoll, petitioner proved that its predecessors underpaid Vernon and Reda Beard, and that the 1988 payments to them were made because of that and other past undercompensation. Here, *34 unlike the dental practices in LaMastro and Bianchi, we do not believe the best evidence of the value of Vernon Beard's personal services in 1976, 1977, and 1978, was the profits of petitioner's predecessors. The instant case is more like Nicoll than Young, LaMastro, or Bianchi. We consider petitioner's and its predecessors' underpayments to Vernon and Reda Beard from 1976 to 1988 in deciding whether petitioner's payments to Vernon and Reda Beard in fiscal year 1988 are reasonable. We believe that Vernon and Reda Beard's compensation, taking into account those years, is reasonable. Even under respondent's alternative view that we consider only 1980 to 1988, this factor favors petitioner. Petitioner paid Vernon Beard $ 931,605 from 1979 to 1988. Zdanowicz estimated he would have earned $ 674,357 as an engineer employed by another firm during those years. The difference is $ 257,248, which is a reasonable difference (28 percent or $ 25,725 per year) for a successful chief executive officer compared to an engineer. Zdanowicz also concluded that petitioner undercompensated Reda Beard for all years before 1987, and that after the 1988 payment, Reda Beard *35 remained undercompensated by $ 111,175. He also concluded that she should have been paid $ 23,530 from 1976 through 1978. Thus, under his analysis, she was underpaid by $ 87,645 ($ 111,175- $ 23,530) if we consider only 1980 to 1988, petitioner's incorporated years. This factor favors petitioner. k. Whether the Employee and Employer Dealt at Arm's Length
If the employee and employer did not deal at arm's length, which may happen if the employee is the employer's sole or controlling shareholder, it suggests the amount of compensation paid may be unreasonable. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d at 1324; Elliotts, Inc. v. Commissioner, 716 F.2d at 1243. We closely scrutinize compensation if the employee controls the employer to see if it is something other than the purchase price of the employee's services. Owensby & Kritikos, Inc. v. Commissioner, supra at 1322-1323; Charles Schneider & Co. v. Commissioner, 500 F.2d at 148; see also Dielectric Matls. Co. v. Commissioner, 57 T.C. 587, 591 (1972). Vernon *36 Beard is petitioner's sole shareholder. There is no evidence that the compensation petitioner paid to Vernon and Reda Beard resulted from free bargaining. That leads us to inquire whether an independent investor would approve the compensation in view of the nature and quality of the services performed and the effect of those services on the investor's return on his or her investment. Owensby & Kritikos, Inc. v. Commissioner, supra at 1326-1327; Elliotts, Inc. v. Commissioner, supra at 1246. We believe an independent investor would approve both Vernon and Reda Beard forgoing compensation to allow petitioner to become successful and the 1988 catchup payments. This factor is neutral. 1. Whether the Employee Guaranteed the Employer's Debt
Courts have considered whether the employee personally guaranteed the employer's debt in deciding whether the employee's compensation was reasonable. See R.J. Nicoll Co. v. Commissioner, 59 T.C. at 51. Vernon and Reda Beard apparently provided for all of petitioner's capital needs. There is no evidence that they or anyone else guaranteed *37 petitioner's debt. This factor is neutral. m. Conclusion
Respondent contends that we should give no weight to the testimony by Vernon and Reda Beard because it was self-serving. We disagree. We may not arbitrarily disregard testimony that is competent, relevant, credible, and uncontradicted. Banks v. Commissioner, 322 F.2d 530, 537 (8th Cir. 1963), affg. in part, and remanding in part T.C. Memo. 1961-237; Loesch & Green Constr. Co. v. Commissioner, 211 F.2d 210, 212 (6th Cir. 1954). Vernon and Reda Beard's testimony that their compensation in fiscal year 1988 was reasonable is entirely consistent with the objective facts and circumstances in the record. We conclude that petitioner's 1988 payments to Vernon and Reda Beard were reasonable. 3. Director's Fees
Petitioner paid and deducted $ 7,500 for director's fees, consisting of $ 2,500 to Vernon Beard and to each of his two children. Respondent determined that petitioner could deduct $ 3,500. We hold the payments are not deductible in excess of the $ 3,500 allowed by respondent. Petitioner did not convince us that Kevin *38 and Donese Beard performed valuable services for petitioner. Their services for petitioner appear to be incidental. For example, Kevin Beard helped with graphic layouts, and Donese Beard helped with shipping and personnel matters. Kevin and Donese Beard did not perform duties of directors, but petitioner paid them the same amount it paid to Vernon Beard for director compensation. Petitioner's expert witness did not cover this issue. Petitioner did not show any correlation between the services rendered and the amount paid. Vernon Beard testified that Kevin and Donese Beard performed minor tasks over the years, and that he was trying to familiarize the children with petitioner's operations in case something happened to him. However, this is not a corporate objective; it is a personal or family objective. We conclude that the director's fees paid to Kevin and Donese Beard in 1988 by petitioner were not reasonable. Thus, petitioner may not deduct more than the $ 3,500 allowed by respondent for director's fees in 1988. To reflect concessions and the foregoing, Decision will be entered under Rule 155. Footnotes
1. Gross sales reported by petitioner for calendar years 1976, 1977, 1978, and 1979, and fiscal years ending Aug. 31 thereafter. Fiscal years 1980-88 are for gross sales and net income and Vernon Beard's compensation and calendar years for Reda Beard's compensation.↩
1. Zdanowicz concluded that in 1988 Vernon Beard was paid $ 597,643 more than the average engineer, and that petitioner paid Vernon Beard $ 242,368 for services rendered in fiscal 1988. However, we adopt respondent's position in the notice of deficiency that Vernon Beard earned $ 243,368 for his services to petitioner in 1988.↩
2. Respondent adopted Gruenfeld's position that only 1988 is relevant, despite Gruenfeld's supplemental report for Vernon Beard's compensation for 1986 and 1987. We note that Gruenfeld concluded that petitioner underpaid Vernon Beard by $ 10,000 for 1986.↩